UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIA DEL CARMEN MARTINEZ PATTERSON,<br><br>Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC., a Delaware Corporation,<br><br>Defendant. | Case No. C18-1180 RSM<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Maria del Carmen Martinez-Patterson's Motion to Compel. Dkt. #21. Plaintiff seeks an Order compelling Defendant AT&T Services Inc. ("AT&T") to produce complete responses to an Interrogatory and several Requests for Production. Defendant opposes the motion. Dkt. #24. For the reasons set forth below, Plaintiff's Motion to Compel is GRANTED IN PART.

## II. BACKGROUND

Ms. Martinez-Patterson is a Hispanic woman of Filipino and Spanish heritage. Dkt. #1 at ¶¶ 15-16. She worked as a Senior Oracle Database Administrator for AT&T from 2000 until her termination in October 2016. At the time of her termination, she was working on a team with

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL - 1

three other Database Administrators—Mr. Anstin Hall, Mr. Sohail Khan, and Mr. Praveen Kollipara. Dkt. #21 at 4. In 2006, Ms. Martinez-Patterson filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and gender. Dkt. #1 at ¶¶ 17-18. Plaintiff claims that after she filed her EEOC charge, AT&T subjected her to retaliation that included hostility, yelling, ridicule, and preventing her advancement within the company. Specifically, she claims that her direct supervisor from 2012 through December 2014, Mr. Uday Shah, was one of the AT&T supervisors who discriminated and retaliated against her. Dkt. #22-1 at 64. Around August 12, 2015, following her mid-year performance review, Plaintiff complained about race and gender discrimination and retaliatory conduct. Dkt. #1 at ¶¶ 20-25. In January 2016, Plaintiff claims that AT&T gave her a performance review that she characterizes as "false, discriminatory and retaliatory". *Id.*

In August 2016, Plaintiff discussed with AT&T the possibility of taking leave under the Family and Medical Leave Act ("FMLA") to care for her brother. *Id.* at ¶¶ 26-33. She formally requested FMLA leave around October 26-27, 2016. The next day, AT&T fired Plaintiff. AT&T claimed that Plaintiff's firing was based on a reduction in workforce ("the 2016 Surplus") that arose from an outsourcing deal with vendor AMDOCS. Dkt. #21 at 4. Plaintiff's job was not outsourced to AMDOCS, but her working group was one of four affected working groups ("AWGs") in which AT&T claimed it was reducing headcount. Dkt. #25-1 at ¶ 9. AT&T claims that because Plaintiff was ranked the lowest of her comparators in her AWG, she was designated for the Surplus and terminated. *Id.* at ¶ 11. Plaintiff contends that AT&T's stated reasons for her termination were pretext, and the firing was motivated by discrimination against her race and gender and retaliation for her previous complaints. Dkt. #1 at ¶¶ 34-36.

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL - 2

On August 10, 2018, Plaintiff filed this action against AT&T under 42 U.S.C. § 1981, the Washington Law Against Discrimination ("WLAD"), the Family Medical Leave Act ("FMLA"), and the Washington Family Leave Act ("WFLA"). *Id.* at ¶ 1. Plaintiff also claims wrongful discharge and lost wages under RCW 49.52 and RCW 49.48.

After service of initial discovery requests and a meet-and-confer between the parties, Dkt. #21 at 7, Plaintiff moves to compel four categories of documents: (1) documents related to AT&T's criteria and selection for the 2016 Surplus; (2) the personnel files of employees supervised by Mr. Shah, regardless of inclusion in the 2016 Surplus; (3) documents related to a vacant Senior Technical Lead position that Plaintiff was not promoted to; and (4) all emails to and from Plaintiff during her employment.

Plaintiff served Defendant with initial discovery requests on January 2, 2019, and Defendant served its responses and objections on February 22, 2019. Dkt. #22 at ¶ 3. Parties met and conferred on April 26 and April 29, 2019 and were unable to resolve the discovery disputes. *Id.* at ¶ 5.

### III. DISCUSSION

#### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "District courts have broad discretion in determining relevancy for

discovery purposes." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### B. The October 2016 Surplus (ROG 10, RFPs A, K and L)

Plaintiff seeks production of documents related to the 2016 Surplus, which Plaintiff claims was a false pretext for her termination. Specifically, Plaintiff seeks: (a) all documents related to AT&T's contention that Plaintiff was terminated as part of the 2016 Surplus (RFP A); (b) all documents related in any way to the 2016 Surplus (RFP K); (c) identification of all employees identified as part of the 2016 Surplus, including their gender, race, national origin, pay rate, position title when selected for surplus, and last date of employment (ROG 10); and (d) all documents related to ROG 10, including the personnel files and rankings of all employees affected by the 2016 Surplus (RFP L). Dkt. #21 at 6 (citing Dkt. #22-1).

Plaintiff claims that AT&T's production to date is limited to those three individuals in Plaintiff's "workgroup"—Mr. Hall, Mr. Khan, and Mr. Kollipara—and provides no insight into the 2016 Surplus process or Plaintiff's selection for termination. In clarifying what remaining documents she seeks related to the 2016 Surplus, Plaintiff specifically requests (1) the identities of all employees selected in the 2016 Surplus; (2) all remaining documents regarding how, when and why AT&T selected employees to be "in scope" and how those employees were ultimately chosen to be terminated; (3) all documents related to the determination of AWGs; (4) all documents related to the decision to terminate Plaintiff; (5) all Surplus-related communications

with employees under Director John Rossi's supervision, and (6) all criteria and other documents related to the ranking system used to evaluate employees for the 2016 Surplus. Dkt. #21 at 6-7.

The Court finds that Plaintiff's requests for information as they apply to the entire 2016 Surplus are overly broad. AT&T contends that Plaintiff's position was not terminated as part of the outsourcing to AMDOCS. *See* Dkt. #25 at ¶ 19. Instead, it claims that hers was one of four positions terminated solely to "streamline operations, increase efficiencies and reduce headcount and costs." *Id.* at ¶ 5. For that reason, the Court finds that information on positions outsourced to AMDOCS, including selection, rankings, and communications, is not relevant to determining whether Plaintiff's selection and termination in the "non-outsourced" category was pretextual. Production of documents related to the entire 2016 Surplus would therefore be unduly broad and disproportionate to the needs of the case. Accordingly, AT&T must produce all documents responsive to RFPs A, K, L, and ROG 10 only as to the four non-outsourced positions designated for the 2016 Surplus. This includes, for example, information on who decided to eliminate the non-outsourced positions, the personnel files and rankings of those employees considered "in scope" for the non-outsourced positions, documents related to how AT&T created the four non-outsourced AWGs, and documents related to notifying Plaintiff or other employees they were "in scope" for the non-outsourced positions.

Additionally, Plaintiff seeks production of 2016 Surplus rankings and personnel files of all employees supervised by Plaintiff's second-level supervisor, Mr. Rossi, "whether or not they were included in the RIF [reduction in force]." Dkt. #21 at 8. This appears to fall under RFP K, which broadly requests all documents related to the 2016 Surplus. Plaintiff has not adequately established that Mr. Rossi's direct reports, who were a level above Plaintiff as Associate Directors of Technology or Senior Business Managers, were similarly situated to Plaintiff. *See* Dkt. #25 at

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL - 5

¶¶ 21-22; *see also Walech v. Target Corp.*, No. C11-254 RAJ, 2012 WL 1068068, at *7 (W.D. Wash. Mar. 28, 2012) (Finding comparator evidence "most relevant when other employees work at the same part of the company as plaintiff, have the same performance, qualifications, and conduct, and have a common supervisor.") (citing *Paananen v. Cellco P'ship*, No. C08-1042 RSM, 2009 WL 3327227, at *6 (W.D. Wash. Oct. 8, 2009).

However, Plaintiff has established a basis to compel production of the 2016 Surplus rankings and personnel files for same-level employees that had Mr. Rossi as their second-level supervisor during the 2016 Surplus. Mr. Rossi was Plaintiff's second-level supervisor from 2012 until her termination, Dkt. #22-1 at 73, and he approved Plaintiff's performance reviews, addressed complaints by Plaintiff, and was allegedly involved in determination of her surplus ranking that resulted in her termination. For that reason, the rankings and personnel files of all employees subject to second-level supervision by Mr. Rossi at the time of the 2016 Surplus—regardless of whether they were terminated due to outsourcing, terminated for non-outsourcing reasons, or ultimately not terminated at all—are relevant. This discovery may reasonably lead to information on how Mr. Rossi addressed complaints or other concerns about his direct reports from employees at Plaintiff's level, including whether Mr. Rossi retaliated or condoned retaliation against other employees at Plaintiff's level who complained about their direct supervisor. *See Hunter v. Coca-Cola Co.*, No. C14-609RAJ, 2015 WL 3874945, at *4 (W.D. Wash. June 23, 2015) (Finding comparator relationship clearer where second-level supervisor addressed complaints about direct reports). To the extent that production of the personnel files of these employees encroaches on the employees' privacy interests, AT&T has failed to explain why the current Protective Order, Dkt. #19, inadequately protects these privacy interests. Accordingly,

AT&T must produce the rankings and personnel files of all employees at Plaintiff's level that had Mr. Rossi as a second-level supervisor during the 2016 Surplus.

**C. Personnel Files of all Employees Supervised by Uday Shah (ROG 11, RFP N)**

Plaintiff also seeks information on all employees supervised by her former supervisor, Mr. Uday Shah, who allegedly discriminated and retaliated against Plaintiff for her complaints. Dkt. #21 at 2. Plaintiff specifically requests that AT&T identify all employees supervised or evaluated by Mr. Shah from January 1, 2009 to the present (ROG 11) and that AT&T provide the full personnel files for those individuals (RFP N). In response to Plaintiff's requests, AT&T identified only those individuals who directly reported to Mr. Shah during the four-month period from August 1 to December 31, 2014. Dkt. #22-1 at 46. AT&T objects to Plaintiff's requests on the basis that it has already produced ten personnel files of AT&T employees, including the other three database administrators in her workgroup and two co-workers she specifically identified. Dkt. #24 at 7. AT&T also argues that Plaintiff's request is not relevant or proportional to the needs of the case, given that Mr. Shah supervised Plaintiff for only four months of any applicable statute of limitations period. *Id.*

The Court finds that Mr. Shah's treatment of other employees he directly supervised is relevant comparator evidence—regardless of what team they worked on and whether their employment period overlapped with Plaintiff's. *See Washington v. Matheson Flight Extenders, Inc.*, No. C17-1925-JCC, 2019 WL 1957710, at *2 (W.D. Wash. May 2, 2019) ("Evidence that demonstrates that employees outside a protected group are treated more favorably than those within is relevant"). Plaintiff named Mr. Shah as an AT&T supervisor that allegedly discriminated, retaliated, and took other adverse actions against her within the statutory time period. Dkt. #21 at 9-10. Given the difficulty in employment discrimination suits to prove "the

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL - 7

inner mental motivations behind allegedly discriminatory acts," courts view personnel files of other employees as "a principal repository of evidence" for motives of an alleged discriminator. *Lauer v. Longevity Med. Clinic PLLC*, No. C13-0860-JCC, 2014 WL 5471983, at *4 (W.D. Wash. Oct. 29, 2014) (Noting the "strong tradition among federal district courts recognizing the relevancy and thus discoverability of personnel files in employment discrimination suits."). To the extent that production of the personnel files of these employees encroaches on the employees' privacy interests, AT&T has failed to explain why the current Protective Order, Dkt. # 19, inadequately protects these privacy interests.

The Court does take issue, however, with Plaintiff's request for personnel files of all direct reports of Mr. Shah dating back to January 1, 2009. *See* Dkt. #22-1 at 46. The temporal scope of discovery must be sufficiently broad to allow a plaintiff claiming discrimination "to be able to find evidence of other discrimination or evidence of other similarly situated employees" without being "so broad as to be overly burdensome." *Paananen*, 2009 WL 3327227, at *9. An appropriate scope is typically within a range of three to eight years. *Id.* (comparing cases). The Court finds that Plaintiff's revised proposal of records "from at least 2012 forward," Dkt. #29 at 4, strikes a more appropriate balance of seven years as opposed to Plaintiff's original request for ten years of records.

Accordingly, the Court GRANTS Plaintiff's requests for the full personnel files of all employees supervised directly by Mr. Shah (ROG 11, RFP N) from January 1, 2012 to the present.

**D. Documents Related to Vacant Technical Lead Position (ROGs 4-6; RFPs F-H)**

Plaintiff also seeks documents related to a vacant Senior Technical Lead position on Uday Shah's team. Plaintiff claims that the position remained vacant after Plaintiff expressed interest in it and was kept vacant until Plaintiff was re-assigned to another team. Dkt. #21 at 2. AT&T

argues that the vacancy arose in March 2012—six years before Plaintiff filed her complaint—and is therefore time-barred by the statute of limitations period for all of her claims. Dkt. #24 at 8. However, even though Uday Shah's failure to promote Plaintiff occurred outside the statute of limitations period, a plaintiff may still use an employer's time-barred discriminatory act as background evidence in support of her timely claims. *See Lyons v. England*, 307 F.3d 1092, 1110 (9th Cir. 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). As stated previously, Plaintiff named Mr. Shah as a supervisor who allegedly discriminated, retaliated, and took adverse actions against her within the statutory time period. Dkt. #21 at 9-10. She may therefore support her timely discrimination claims with background evidence of his alleged animus. *See Moussouris v. Microsoft Corp.*, No. C15-1483-JLR, 2018 WL 3584701, at *10 (W.D. Wash. July 11, 2018) ("At the initial stage of an employment discrimination case, 'appropriate background evidence will be evidence . . . that, when combined with evidence of the employer's present conduct, give[s] rise to an inference of unlawful discrimination.'")

AT&T responds that discrimination cannot be inferred from Mr. Shah's decision not to promote Plaintiff, given that nobody was promoted to fill the Senior Technical Lead position. Dkt. #24 at 9. The Court finds AT&T's argument unavailing. An employer's decision not to promote—even if it keeps the position vacant—may still be motivated by discriminatory animus. *See, e.g.*, *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 250 (1981) (Finding prima facie discrimination where position remained vacant for six months after plaintiff applied). For that reason, documents and communications related to Defendant's decision not to promote Plaintiff (ROG 4, RFP F) may reasonably lead to relevant background evidence of Mr. Shah's alleged animus that would support her timely claims.

However, given that the act itself is time-barred, Plaintiff may only seek discovery likely to lead to relevant evidence for her timely claims. She may not seek information that would solely serve to prove Mr. Shah's time-barred act was discriminatory. This includes ROG 6 and RFP H, which seek information on other AT&T teams that kept vacant a Senior Technical Lead position for over six months, and ROG 5 and RFP G, which request information on all employees who subsequently filled the Senior Technical Lead position. Such requests are unlikely to lead to relevant background evidence for her timely claims and are disproportionate to the needs of the case.

For the foregoing reasons, the Court GRANTS Plaintiff's motion to compel documents related to the vacant Senior Technical Position as to ROG 4 and RFP F. Plaintiff's motion to compel is DENIED as to ROGs 5-6 and RFPs G-H.

**E. All Emails To and From Plaintiff during her Employment (RFP NN and QQ)**

Lastly, Plaintiff requests production of all emails addressed to or from Plaintiff that have not been produced. Dkt. #21 at 2. AT&T claims that it no longer has access to the emails, since it destroyed Plaintiff's email account pursuant to its 55-day document retention policy. Dkt. #26 at ¶ 4-5. AT&T argues that even if it had access to the emails, Plaintiff's request is overbroad and unduly burdensome since Plaintiff has provided no restrictions on time period, custodians, or search terms. Dkt. #24 at 10. Plaintiff responds that search terms are often inappropriate in employment discrimination cases, and particularly in instances where the defendant prematurely destroyed a plaintiff's email account when it anticipated litigation. Dkt. #29 at 6-7.

Even if AT&T was obligated to preserve Plaintiff's email account, Plaintiff has not shown that all remaining emails from her inbox and outbox, for all sixteen years of her employment with AT&T, is relevant and discoverable. Plaintiff has not explained what general information or

particular email she seeks through this request, and why it cannot be produced through a more targeted search. Instead, she argues that search terms "are often not appropriate in an employment discrimination case, period." Dkt. #29 at 7. However, even in hostile work environment and employment discrimination contexts, courts have found requests for a plaintiff's entire email inbox and outbox disproportionate to the needs of the case and unduly burdensome. *See, e.g.*, *Odeh v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 14-cv-793-JJB-RLB, 2016 WL 1254361, at *3–4 (M.D. La. Mar. 29, 2016); *Marlow v. Chesterfield Cty. Sch. Bd.*, No. 10-cv-18-DWD, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010). The Court finds this to be the case here, given that Plaintiff has provided no search terms, time limit, or other means to limit the scope. The Court therefore DENIES Plaintiff's request for all remaining emails to and from Plaintiff.

## IV. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff's Motion to Compel, Dkt. #21, is GRANTED IN PART. Within fourteen (14) days of the date of entry of this Order, Defendant shall produce to Plaintiff:

(1) All documents responsive to RFPs A, K, L, and ROG 10 as to the non-outsourced positions designated for the 2016 Surplus;

(2) The personnel files and 2016 Surplus rankings of all employees at Plaintiff's level, regardless of reason for termination or whether they were terminated, that had Mr. Rossi as a second-level supervisor during the 2016 Surplus (RFP K);

(3) The full personnel files of all employees supervised directly by Mr. Shah (ROG 11, RFP N) from January 1, 2012 to the present; and

(4) All documents related to the vacant Senior Technical Position responsive to ROG 4 and RFP F.

DATED this 18th day of October 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL - 12