THE HONORABLE JUDGE RICARDO S. MARTINEZ

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| MARIA DEL CARMEN MARTINEZ-PATTERSON,<br><br>        Plaintiff,<br><br>v.<br><br>AT&T SERVICES, INC., a Delaware Corporation,<br><br>        Defendant. | Civil Action No.: 2:18-cv-01180<br><br>**DEFENDANT AT&T SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**NOTE ON MOTION CALENDAR: FEBRUARY 5, 2021**<br><br>**NO ORAL ARGUMENT REQUESTED** |

Pursuant to Fed. R. Civ. P. 56, Defendant AT&T Services, Inc. ("AT&T" or the "Company") respectfully moves the Court to enter summary judgment in its favor on Plaintiff's claims under 42 U.S.C. § 1981 ("Section 1981"), the Washington Law Against Discrimination ("WLAD"); the Family and Medical Leave Act ("FMLA"), and the Washington Family Leave Act ("WFLA"), as well as her claims for wrongful discharge in violation of public policy and for lost wages under RCW 49.52 *et. seq.* and RCW 49.48 *et seq.* (See Dkt 1.) As set forth more fully below, there is no genuine issue of material fact, and AT&T is entitled to judgment as a matter of law.

## I.    **INTRODUCTION**

Plaintiff Carmen Martinez-Patterson brought this lawsuit against AT&T, her former employer, raising a plethora of claims, including discrimination based on race, gender, and

national origin, retaliation, wrongful termination in violation of public policy, and unpaid wages. The undisputed material facts do not support any of her claims.

Plaintiff was employed by AT&T as a Database Administrator ("DBA"). In that role, she was part of a team of DBAs, applications developers, and analysts responsible for supporting internal financial reporting applications. Plaintiff's managers concurred that she has strong technical skills, but she had challenges with leadership, communications with her coworkers, and working cooperatively with the team on deadlines. She was overly sensitive to being questioned or challenged by team members, and she often responded in an aggressive and confrontational manner, claiming that she was being "taunted" or disrespected. Rather than acknowledge her shortcomings and work towards improving them, Plaintiff convinced herself that she was being "mistreated" and blamed the culture of those of East Indian national origin as not respecting women. AT&T investigated Plaintiff's claims and found them to be meritless.

In 2016, the Company had a force reduction (a "Surplus"), which affected 169 of the 284 employees in Plaintiff's organization, including her first and second-level managers. Of the four DBAs in her workgroup, Plaintiff was ranked the lowest, and her position was eliminated. The undisputed material facts show that Plaintiff's race, sex, national origin, protected activity, and request for leave were not factors in Plaintiff's termination as part of the Surplus.

## II.   STATEMENT OF MATERIAL FACTS

### A.  Plaintiff's Employment at AT&T.

Plaintiff was employed by AT&T or a predecessor company from 2000 to December 28, 2016, when her position was eliminated in a reduction in force ("Surplus"). (Lintner Decl. ¶¶ 6-7; Pl. Dep. 35:9-11).[1]

Plaintiff worked in the Business Network and Corporate Solutions IT Department, which provided IT support for internal financial reporting applications. (Rossi Decl. ¶ 7). From August 2014 until her termination,[2] Plaintiff worked as a DBA responsible for building and

---

[1] Plaintiff originally worked for AT&T Wireless, which was acquired by Cingular in 2004, which in turn became part of AT&T.  (Pl. Dep. 32:19-5, 46:16-20).

[2] The longest statute of limitations applicable to Plaintiff's claims in her Complaint filed August

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 2
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

supporting Oracle database systems, as well as providing user technical support. (Pl. Dep. 255:18-21, 259:18-23). Specifically, the DBAs were responsible for ensuring that the databases supporting applications functioned properly. (Rossi Decl. ¶ 14)

Plaintiff initially provided support for the Profitability ("PFT") application for the wireless business under then-Assistant Vice President Noni Gonzalez. (*Id.* ¶ 8). In 2011, responsibility for the wireless PFT application was consolidated under John Rossi (white male), then-IT Director for Corporate Systems, and Plaintiff moved to Mr. Rossi's organization. (*Id.* ¶¶ 3,9). In addition to the PFT application, Mr. Rossi's organization was responsible for other internal financial applications. (*Id.* ¶ 10). There were three additional DBAs in Mr. Rossi's organization: Praveen Kolliparra (Asian male), Anstin Hall (Black male), and Sohail Khan (Asian male). (*Id.* ¶ 11; Dunne Decl. Ex. A at ATT000177).

Team Leads identified enhancements to applications and coordinated the work of team members, which included the DBAs, applications developers, and analysts. (Rossi Decl. ¶ 14). The Team Leads solicited and considered the expertise, feedback, and concerns of team members, but ultimately determined the team's course of action after assessing business needs, potential risks, and the time frame for completion of the work. (*Id.*).

### B. Plaintiff's 2006 EEOC Charge.

Plaintiff alleges that she filed an EEOC Charge in 2006 when she worked for a predecessor company, claiming she had been discriminated against when she was "demoted." (Pl. Dep. 38:15-21, 39:13-25, 48:9-12, 285:10-15). Plaintiff explained she "accidentally" learned her position title had been changed and assumed that change reflected a demotion although her pay was not reduced. (Pl. Dep. 39: 13-21). According to Plaintiff, the charge was settled when the Company agreed to change her job title. (Pl. Dep. 47:25-48:12).[3]

---

10, 2018, is the four-year statute of limitations for Section 1981 claims. Accordingly, the relevant time period at issue in this litigation begins August 10, 2014.

[3]AT&T does not have a record of any 2006 charge filed by Plaintiff, and Plaintiff was unable to produce a copy of it or any settlement agreement during discovery. It seems likely that her title may have been changed in connection with the changing ownership of AT&T Wireless/Cingular in the 2004-2006 time period.

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 3
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

### C. Plaintiff's Interpersonal Conflicts with Her Supervisor and Team Lead.

When Plaintiff was transferred to Mr. Rossi's organization in 2011, Uday Shah, Associate Director - Technology, became her direct manager. (Pl. Dep. 57:25-58:2, 58:18-21). Plaintiff worked in Washington, while Mr. Shah worked in Illinois and reported to Mr. Rossi, who was in New Jersey. (Pl. Dep. 58:18-21; Rossi Decl. ¶¶ 16-17). Plaintiff admits she never met Mr. Shah in person – they communicated through phone calls, internal chats, and email. (Pl. Dep. 60:18-23).

Mr. Rossi believed that Plaintiff had strong technical skills. (Rossi Decl. ¶ 18). However, in his view, when team members disagreed with or questioned Plaintiff on calls, she responded in an argumentative manner and acted as if they were insulting or disrespecting her. (*Id.* ¶¶ 18, 21). Mr. Rossi found her to be aggressive with her coworkers with respect to processes and ideas, and he thought that she seemed to expect that everything should be done her way. (*Id.* ¶ 18). Mr. Rossi observed that Plaintiff would push back on timelines that she considered unreasonable or unfeasible, and she often complained about the Team Leader's chosen course of action if it conflicted with what she thought should be done. (*Id.* ¶ 19). When Plaintiff complained about timelines and refused to do the DBA work, the team often went to other DBAs who were able to complete the work as requested. (*Id.* ¶ 20). Mr. Rossi did **NOT** consider Plaintiff to be a team player. (*Id.* ¶ 23).

In October--November 2012, Mr. Rossi and Plaintiff discussed complaints she had about working with Mr. Shah. (*Id.* ¶ 27). Plaintiff forwarded to Mr. Rossi certain emails from Mr. Shah, claiming that she felt "demeaned" and "put down" by them. (*Id.* ¶ 28). She told Mr. Rossi that she believed because Mr. Shah was of East Indian national origin, he had no respect for women. (Pl. Dep. Ex. 1; Rossi Decl. ¶ 30). Mr. Rossi reviewed the emails, and he did find them to be demeaning or unprofessional. (Rossi Decl. ¶ 29).

Mr. Rossi reported to AT&T HR Plaintiff's belief that Mr. Shah did not respect her, who advised Mr. Rossi to get additional details from Plaintiff and to advise Plaintiff to report any concerns through her Employee Relations Manager, internal EEO resources, or the AT&T

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 4
CIVIL ACTION NO.: 2:18-CV-01180

Hotline. (*Id.* ¶¶ 31-33). When Mr. Rossi followed up with Plaintiff regarding her belief Mr. Shah was biased against her because of his East Indian origin, Plaintiff provided no additional information. (*Id.* ¶ 34). When Mr. Rossi checked in again with Plaintiff a couple of weeks later and then again in January 2013, she reported that there were no further incidents. (Rossi Decl. ¶¶ 35, 36). In her deposition, Plaintiff admitted Mr. Shah generally had a "mild" tone but said she had a hard time communicating with him because he lacked a technical background. (Pl. Dep. 348:18-349:5).

In 2013, Plaintiff also began to voice disagreements with and complain about Mehdi Hosseini, the Team Lead responsible for the Oracle PFT application.[4] (Rossi Decl. ¶ 37; Pl. Dep. 256:22-24). In his Team Lead role, Mr. Hosseini was responsible for coordinating the work of the various DBAs, developers, and analysts who supported the PFT application, determining project and work parameters, and setting timelines for task completion after consultation with the team. (Rossi Decl. ¶ 38). Mr. Hosseini reported to Associate Director - Technology Debbie Russo (white female), who also reported to Mr. Rossi. (*Id.* ¶ 39). Plaintiff claims that Mr. Hosseini asked her to perform tasks that she knew would cause a high risk of system failure or performance problems, he would not pay attention to what she said, and if she notified him of the potential issues, he would "taunt her." (Pl. Dep. 164:17-165:7, 203:6-18). Plaintiff believed that Mr. Hosseini "did not have software build background or systems architecture, so it was – it sounds – it felt like he would already decide what outcome was going to be and then tell me that's what we're going to do." (*Id.* 165:2-5). When asked to explain how Mr. Hosseini "taunted" her, Plaintiff said that Mr. Hosseini told her in a "taunting, heavy-handed" manner, "I don't really care what you think," and on calls would tell her, "you didn't answer my question." (Pl. Dep. 165:6-9, 293:19-21). Plaintiff claimed Mr. Hosseini set "unreasonable, impossible deadlines." (Pl. Dep. 165:21-23).

Plaintiff continued to resist Mr. Hosseini's efforts to coordinate the team's work. (Russo

---

[4] As with Mr. Shah, Plaintiff never worked with Mr. Hosseini in person and all workplace interactions between them were through phone calls, email, or chat. (Pl. Dep. 91:2-14, 306:6-15).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 5
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Decl. ¶ 12).  On July 18, 2013, Plaintiff sent an email to Mr. Rossi and Mr. Shah complaining that Mr. Hosseini and the assigned Project Manager expected the DBAs to do what he told them to do and have little to no influence on technical decisions. (Pl. Dep. Ex. 8). Mr. Rossi and Mr. Shah shared Plaintiff's email and concerns with Ms. Russo as Mr. Hosseini's direct manager. (Pl. Dep. Ex. 9; Russo Decl. ¶ 13). Ms. Russo responded that her team welcomed the knowledge, technical skills, and experience of Mr. Shah's team. (Pl. Dep. Ex. 9; Russo Decl. ¶ 14). She noted that she had worked with Mr. Hosseini for years, had seen him interact with many different teams and individuals, and had never found him to be anything but open to all opinions and ideas. (Pl. Dep. Ex. 9; Russo Decl. ¶ 15). Ms. Russo invited Plaintiff to come to her directly regarding issues with Ms. Russo's team members and stated that she was open to discussing Plaintiff's concerns at any time. (Pl. Dep. Ex. 9; Russo Decl. ¶ 16). Plaintiff perceived Ms. Russo's response as "threatening" and believed that Ms. Russo should have addressed the issue with Mr. Hosseini instead of her. (Pl. Dep. 103:7-11, 104:14-15, Ex. 9). Plaintiff concluded that Ms. Russo must also be biased against her.[5] (Pl. Dep. 108:8-10).

Beyond the East Indian men with whom Plaintiff claimed to have issues, others found working with Plaintiff to be challenging. For example, Senior Business Manager Jill Boccardo (white female) described Plaintiff as condescending, abrasive, non-cooperative, and impatient on projects. (Boccardo Decl. ¶¶ 4, 9). Ms. Boccardo observed that if the team did not go along with Plaintiff's desired path or Plaintiff did not like what was being discussed, Plaintiff would hang up the phone during team conference calls and refuse to respond to internal messages from the team. (*Id.* ¶ 4). A key part of Ms. Boccardo's responsibilities was managing timelines, and she relied on Plaintiff's technical expertise to determine how long it would take to accomplish tasks and key milestones on projects. (*Id.* ¶ 5). However, Ms. Boccardo observed that Plaintiff often refused to provide the requested input or simply refused to do the work. (*Id.*). In those instances, Ms. Boccardo asked Team Leads Mehdi Hosseini and Jeff Kuhfeld to

---

[5] Plaintiff did not believe that Mr. Rossi was biased against her because of her race, gender, or national origin.  (Pl. Dep. 296:9-13).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 6
CIVIL ACTION NO.: 2:18-CV-01180

encourage Plaintiff to complete the necessary tasks. (*Id.* ¶ 6). Ms. Boccardo also sought to work with other DBAs whom she found more cooperative. (*Id.* ¶ 6).

Similarly, Senior Program Manager Jane Kearney (white female) found Plaintiff to be volatile, and felt like she needed to "walk on eggshells" around Plaintiff. (Kearney Decl. ¶¶ 4, 6). When the team was on a deadline and asked for Plaintiff's help, Plaintiff was quick to respond in a dramatic fashion if she didn't like the time constraints. (*Id.* ¶ 4). Ms. Kearney also observed that when Plaintiff would get upset during a phone call or didn't like what Ms. Kearney had to say, Plaintiff would hang up the phone and refuse to talk to her. (*Id.* ¶ 5).

### D. Plaintiff's Allegations Against Mr. Shah and Mr. Hosseini Are Investigated and Found Meritless.

On September 2, 2014, Plaintiff sent an email to Mr. Rossi in which Plaintiff claimed she believed she was being treated differently from Indian men in her group and that Indian men were the preferred set of employees in their organization. (Pl. Dep. Ex. 4 ATT000406). Plaintiff also repeated her allegation that Mr. Hosseini had scolded her and "almost" taunted her when she raised issues with his plan or made a different recommendation. (*Id.*).

The next morning Mr. Rossi reached out to Plaintiff and scheduled a time to discuss her concerns. (Pl. Dep. Ex. 5 ATT000142). During the call, Plaintiff raised her 2006 EEO claim and her belief that she was being retaliated against for filing it and had been prevented from applying for other job opportunities at AT&T. (Rossi Decl. ¶ 45). This was the first Mr. Rossi had heard of her 2006 claim. (*Id.* ¶ 46). Mr. Rossi told Plaintiff that he wasn't aware of the 2006 claim and that nothing was preventing her from applying for other opportunities in the Company. (*Id.* ¶ 48). Mr. Rossi felt that Plaintiff appeared to be struggling to accept Mr. Hosseini's role as Team Lead. (*Id.* ¶ 49). He reminded her that she was one of the many functions supporting the PFT application, and Mr. Hosseini would not always agree with what she said. (*Id.* ¶¶ 49-50). Mr. Rossi told Plaintiff that Mr. Hosseini's job was to assess the opinions and feedback from all members of the team and make the best decision for the client's needs. (*Id.* ¶ 49).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 7
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

The following week Plaintiff sent an email to Mr. Rossi in which she further discussed concerns. (Pl. Dep. Ex. 5 ATT000141). She said Mr. Hosseini scolded her, used his position to put her down, taunted her if she did not agree with him, and pushed her on technical solutions that she believed would fail. (*Id.*). Plaintiff also wrote that she "suspect[ed]" that Mr. Shah was sending messages to others to make sure that Mr. Kollipara or the rest of her East Indian team members were his allowed "authorities and contacts" to direct questions away from her and towards the Indian men on her team. (*Id.*). Mr. Rossi forwarded Plaintiff's email to HR and also reported it to the EEO group. (Rossi Decl. ¶ 52).

Sr. EEO Consultant Marybeth Dunne investigated Plaintiff's claims that she was discriminated against on the basis of her race (Hispanic) and gender (female) and retaliated against due to her 2006 EEOC claim. (Dunne Decl. ¶¶ 4-5, Ex. A; Pl. Dep. 134:20-135:1) Ms. Dunne noted after interviewing Plaintiff that Plaintiff was unable to articulate specific examples of how she had been discriminated against. (Dunne Decl. ¶ 12). For example, Plaintiff claimed she was excluded from important projects but could not identify them. (*Id.* ¶ 18). To support her claims that she was discriminated against based on her race and gender, Plaintiff simply stated, "Indian men do not place importance on women in the workplace." (*Id.* Ex. A ATT000170). Ms. Dunne reviewed the performance evaluations of Mr. Shah's direct reports and found no evidence of bias in how they were evaluated. (*Id.* ¶ 24). Ultimately, Ms. Dunne was unable to substantiate that any discrimination had occurred but recommended that Mr. Rossi have a developmental discussion with Mr. Shah regarding Plaintiff's perception that women and non-Indian employees were treated less favorably and to ensure that Mr. Shah understood the importance of respect in AT&T's Business Code of Conduct. (*Id.* ¶¶ 34-35). The investigation was closed on November 4, 2014. (*Id.* ¶ 36).

### E.  DBAs Move to Debbie Russo's Team.

On December 16, 2014, Plaintiff and DBAs Kollipara, Hall, and Kahn were transferred to Ms. Russo's team, and Ms. Russo became Plaintiff's direct supervisor. (Pl. Dep. 144:19-146:12, Ex. 14). At that point, Plaintiff had no further work interactions with Mr. Shah, other

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 8
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

than receiving her 2014 performance review from him, on which she received a Fully Meets"
Overall Performance Rating. (Pl. Dep. 147:1-20).

Plaintiff's managers and coworkers continued to have difficulties working with her. Ms.
Russo observed that on team calls, Plaintiff could be confrontational and did not appear to
listen to the other team members, and that Plaintiff did not like to be questioned by Mr.
Hosseini or others on the team. (Russo Decl. ¶ 10). Ms. Russo noted that Plaintiff routinely
pushed back on project timelines and deadlines – she wanted to perform her work in her own
way and her own pace. (*Id.* ¶ 11). Ms. Russo coached Plaintiff on responding productively to
efforts by her team members to expedite timelines when feasible and required by business
needs. (*Id.* ¶¶ 22, 24; Pl. Dep. Ex. 16).

In early July 2015, Plaintiff completed a Skills Assessment in which she indicated that
her secondary role was a Team Lead/Technical Director. (Russo Decl. ¶ 17). Ms. Russo
questioned why Plaintiff had listed these roles  when she had not held either position. (*Id.* ¶ 18).
Plaintiff responded that she had performed the team lead function without holding the title
when she was on Mr. Shah's team from 2012 to 2013, and for some time in 2014 when Plaintiff
apparently believed technical leadership was absent on certain projects. (*Id.* ¶ 19; Pl. Dep. Ex.
16). Ms. Russo stated that these were people-managing roles not applicable to Plaintiff since
she did not supervise any other employees (Russo Decl. ¶ 20; Pl. Dep. Ex. 16*)*.

Plaintiff also complained during this exchange that Mr. Hosseini didn't like the
completion dates that she gave him for a project, and that she took a "verbal beating" from him.
(Pl. Dep. Ex. 16 CMP 114; Russo Decl. ¶ 21). Plaintiff claimed that continuous discussions of
the migration plan were "a series of painful verbal attacks taunting" from Mr. Hosseini, that the
situation was "extremely tense" in that Plaintiff didn't know if she was going to get "verbally
beat up" or her efforts and findings would be "diminished" by Mr. Hosseini. (Pl. Dep. Ex. 16
CMP 114). Ms. Russo addressed Plaintiff's complaints about Mr. Hosseini in a follow-up email
stating Mr. Hosseini had every right to challenge completion dates, just as Ms. Russo herself
would challenge timeliness if she felt the timelines presented could be accelerated. (Pl. Dep.

Ex. 16 CMP 114; Russo Decl. ¶¶ 20). Ms. Russo concluded that she expected her team to challenge themselves to deliver the best product in the shortest time possible for their internal clients, and that Plaintiff should expect to be so challenged. (Pl. Dep. Ex. 16 CMP 114; Russo Decl. ¶ 24). Ms. Russo stated that she hoped Plaintiff would perceive the challenge as positive and invited Plaintiff to meet with her if she wanted to discuss the issue further. (*Id.*).

### F.   Plaintiff's Request For FMLA Leave to Care for Her Ill Brother.

In August 2016, Plaintiff asked Ms. Russo for information on applying for FMLA leave to care for her seriously-ill brother. (Russo Decl. ¶ 25). Because Ms. Russo had not had an employee request FMLA leave prior to Plaintiff's request, Ms. Russo sought guidance from AT&T HR and was told that FMLA leave was not available for siblings.  (*Id.* ¶ 26). On August 12, 2016, Ms. Russo notified Plaintiff that the FMLA did not appear to cover care for a sibling, and she provided Plaintiff additional information regarding FMLA, leave available under Washington law, and AT&T's voluntary time off option. (Pl. Dep. Ex. 19; Russo Decl. ¶ 27). Plaintiff then raised the possibility that she could qualify for FMLA leave under the "in loci parentis" provision. (Pl. Dep. Ex. 19; Russo Decl. ¶ 28). Ms. Russo discussed the issue with HR and told Plaintiff the documents Plaintiff needed to provide in order for the leave to qualify under that designation. (Pl. Dep. Ex. 19; Russo Decl. ¶ 29).

On August 22, 2016, Ms. Russo followed up with Plaintiff and informed her that as Plaintiff's supervisor, she (Ms. Rossi) had to complete the initial FMLA form on Plaintiff's behalf. (Pl. Dep. Ex. 20; Russo Decl. ¶ 30). Ms. Russo notified Plaintiff that she was eligible for 480 hours or 12 weeks of leave, and she could request FMLA leave as consecutive days, an intermittent absence or a reduced work schedule. (Pl. Dep. Ex. 20; Russo Decl. Ex. C). Ms. Russo asked Plaintiff to tell her when Plaintiff intended to take FMLA leave and for how long, and Ms. Russo would initiate the request. (*Id.*). Ms. Russo also encouraged Plaintiff to contact HR with any questions and sent Plaintiff the link to the FMLA request form. (*Id.*). Plaintiff decided not to apply for FMLA leave at that time. (Pl. Dep. 224:13-23, 229:7-10; Russo Decl. ¶ 31). She agreed Ms. Russo tried to help her navigate the leave process , although she contends

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 10
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Ms. Russo should have done more earlier. (Pl. Dep. 254:16-24).

Almost two months later, on October 16, 2016, Plaintiff notified Ms. Russo Plaintiff was "officially" requesting FMLA leave for the second week of December 2016 to care for her brother. (Pl. Dep. Ex. 21; Russo Decl. ¶ 31). Ms. Russo submitted the request to HR on October 25, 2016. (Pl. Dep. Ex. 24; Russo Decl. ¶ 32). On October 31, 2016, Ms. Russo was notified that Plaintiff's request for FMLA leave was submitted too early because it was more than 30 days before the anticipated leave, and should be resubmitted later. (Pl. Dep. 254:5-24, Ex. 25; Russo Decl. ¶ 33). Ms. Russo conveyed this information to Plaintiff and told her that she would resubmit the request as instructed. (Pl. Dep. 254:12-15, Ex. 25; Russo Decl. ¶ 34).

### G.  The 2016 Surplus and Termination of Plaintiff's Employment.

In late 2016, the Digital Experience Department had a reduction in force with the objective of outsourcing certain functions to an AT&T vendor, streamlining operations, increasing efficiencies, and reducing headcount and costs. (Dkt. 25 ¶¶ 4, 5, 7). 169 of the 284 employees in the Department were selected for the 2016 Surplus. (*Id.*  ¶¶ 17-18). The 2016 Surplus consisted of ten "Affected Work Groups" ("AWGs"). (*Id.* ¶ 7). Four of the AWGs were not outsourced, but were nevertheless subject to a headcount reduction. (*Id.* ¶ 9). Plaintiff was in AWG 1, the group of four DBAs who reported to Ms. Russo. (*Id.* ¶ 7). Neither Mr. Rossi nor Ms. Russo had any input into whether the headcount in AWG 1 would be reduced or by how many positions. (Rossi Decl. ¶ 72; Russo Decl. ¶ 36).

On October 4, 2016, in connection with the 2016 Surplus, a survey was sent to all employees in the AWGs notifying them that force reductions were anticipated and inviting them to express interested in leaving in exchange for severance. (Dkt. 25 ¶ 9). None of the DBAs in AWG 1 expressed such interest. (*Id.* ¶ 9). The Technology Directors in the Department were separately requested to rate and rank employees in the AWGs after completing a training course on the assessment process. (Rossi Decl. ¶ 57, 58). Employees received ratings of 1 (lowest) to 5 (highest) on four competencies: 1) Performance; 2) Leadership; 3) Skills; and 4) Experience. (*Id.* ¶ 59). Each competency counted for 25% of the

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 11
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

employee's ranking. (*Id* ¶ 60). The "Performance" rating was based on the employee's performance level at the time of assessment. (*Id.* ¶ 61). The "Leadership" rating was a composite of five subcategories: a) character, b) leading change; c) interpersonal skills; d) personal capability; and e) focus on results. (*Id.* ¶ 62). The Directors were required to submit their ratings and rankings by October 11, 2016. (*Id.* ¶ 63).

Mr. Rossi consulted with Ms. Russo regarding the ratings of the DBAs in AWG 1. (*Id.* ¶ 64). Mr. Rossi did not consult with Mr. Shah regarding the AWG-1 ratings. (Rossi Decl. ¶ 65). At the time Mr. Rossi rated the DBAs, he was not aware that Plaintiff planned to take leave to care for her brother, and it was not a factor in his ratings. (*Id.* ¶ 67). Similarly, Ms. Russo did not consider Plaintiff's plans to take leave in giving her input regarding the DBAs' ratings to Mr. Rossi. (Russo Decl. ¶ 38).

The ultimate ranking in order of highest to lowest in AWG 1 was: Praveen Kollipara, Anstin Hall, Sohail Khan, and Plaintiff. (*Id.* ¶ 68, Ex. E). Plaintiff received the same ratings as those ranked above her in areas such as skills and experience, but she was rated lower on Leadership/Interpersonal Skills, Leadership/Character, and Performance. (*Id.* Ex. E). Mr. Rossi submitted the ratings and rankings by the October 11, 2016 deadline. (*Id.* ¶ 69).

On October 27, 2016, Mr. Rossi received an email with the list of sixteen Surplus-impacted employees in his organization, which included Plaintiff. (*Id.* ¶¶ 71-72). Because Plaintiff ranked the lowest of her comparators in AWG 1, she had been designated as surplus with her DBA position being eliminated. (Dkt. 25 ¶ 11).[6] Mr. Rossi and Ms. Russo met with Plaintiff the next day on October 28, 2016 to inform her she was being surplused. (Pl. Dep. 282:9-12). She was eligible to receive severance in connection with the separation, which she declined. (Pl. Dep. 283:9-12, 283:16-18). The management positions of Mr. Rossi and Ms. Russo were eliminated as well. (Rossi Decl. ¶ 74; Russo Decl. ¶ 41). They applied for and were selected to fill other vacant positions at the Company. (*Id.*).

---

[6] Plaintiff was also eligible to apply for other positions in AT&T. (*See* Pl. Dep. 304:5-11). Plaintiff applied for four positions, but was not selected. (Pl. Dep. 303:13-304:25). She does not contend that she was not selected because of any discriminatory or retaliatory factor. (Pl. Dep. 304:22-25).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 12
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Plaintiff's employment was terminated on December 28, 2016. (Dkt. 25 ¶ 15). Plaintiff was issued her last paycheck on the next scheduled payroll date of January 6, 2017 for all wages earned through her last day of employment.  (Meier Decl. ¶  7, Ex. A).

In 2018, Plaintiff filed her Complaint alleging that AT&T discriminated against her on the basis of her race (Hispanic), gender (female), and national origin (Philippines with Spanish heritage) and retaliated against her in violation of Section 1981 and the WLAD. (Dkt. 1 ¶ 2). Plaintiff also claimed that AT&T discharged her because she requested FMLA/WFLA leave. (*Id.*) Finally, Plaintiff asserts claims for wrongful discharge in violation of Washington common law and lost wages under RCW 49.52 and RC 49. 48. (*Id.)*

## III.   <u>ARGUMENT</u>

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). If the moving party meets its burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658; *Celotex*, 477 U.S. at 323.

As discussed below, Plaintiff has offered nothing in support of her claims beyond her own subjective belief that her managers and Team Lead were biased against her and that she was the best-performing DBA on her team. Because the undisputed material facts do not support her claims, summary judgment should be granted.

### A. Discrimination and Retaliation Claims Based on Adverse Actions that Occurred Before August 10, 2014 Are Time-barred.

The statute of limitations for Section 1981 race-based claims is four years, and the statute of limitations for WLAD claims is three years. *Jones v. King Cnty. Metro Transit*, No.

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 13
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

C07-319Z, 2008 WL 2705138, at *10 (W.D. Wash. July 9, 2008). Plaintiff filed her Complaint on August 10, 2018. (Dkt. 1). While Plaintiff's complaints of various perceived slights and workplace disagreements extend as far back as 2006, to the extent Plaintiff asserts claims based on actions that occurred before August 10, 2014, they are time-barred. *See Jones*, 2008 WL 2705138, at *10; *see also Raines v. Seattle Sch. Dist. No. 1*, No. C09-203 TSZ, 2013 WL 496199, at *3 (W.D. Wash. Feb. 7, 2013) (WLAD claims based on discrete actions occurring outside of the three-year statute of limitations are time-barred).

### B. Plaintiff's Discrimination Claims under Section 1981 and WLAD Fail as a Matter of Law.

Plaintiff alleges she was discriminated against because of her race in violation of Section 1981, because of her sex, race, and national origin in violation of WLAD. As discussed below, Plaintiff cannot state a claim under either statute.

Discrimination claims under Section 1981 and WLAD may be proven through direct or circumstantial evidence. When a plaintiff lacks direct evidence of discrimination, as Plaintiff does here, courts evaluate claims under the three-step *McDonnell Douglas* burden-shifting framework. *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1211 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019). First, the plaintiff must establish a prima facie case of discrimination, typically by showing: 1) she is a member of a protected class; 2) she was qualified for her position; 3) she was subject to an adverse action; and 4) similarly-situated employees outside of the protected class were treated more favorably. *Id*. If the plaintiff fails to show a prima facie case by establishing facts that support each element of her claim, the defendant is entitled to judgment as a matter of law. *Blincoe v. Boeing Co.*, No. C06-718MJP, 2007 WL 2778352, at *4 (W.D. Wash. Sept. 21, 2007).

If the plaintiff does establish a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *Id.* Once the defendant has articulated a legitimate, non-discriminatory reason for the adverse action, the plaintiff must present evidence showing that the defendant's articulated reason is

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 14
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

pretext for unlawful discrimination in order to avoid summary judgment on her claims. *Id.*

Section 1981 and WLAD diverge on the plaintiff's demonstration of pretext at the third stage of *McDonnell Douglas*. Under Section 1981, the plaintiff must show that *but-for* her race, she would not have suffered the loss of a protected right. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Under WLAD, Plaintiff must show that her membership in a protected class was a "substantial factor" in the adverse employment action. *Neely v. Boeing Co.*, No. C16-1791-JCC, 2019 WL 2178648, at *4 (W.D. Wash. May 20, 2019), *aff'd*, 823 F. App'x 494 (9th Cir. 2019). Plaintiff may show pretext by either "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Massucco v. Grp. Health Cop-op*, 225 F. App'x 129, 132 (9th Cir. 2007). Burden-shifting aside, the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Shokri*, 311 F. Supp. 3d at 1211 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

### 1.   Plaintiff Cannot State a Viable Discrimination Claim Based on AT&T's Termination of Her Employment.

Adverse employment actions are generally limited to tangible employment actions that constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Simmons v. State*, 187 Wn. App. 1041 (Wn. App. Div. 2015). Here, the only actionable adverse employment action alleged by Plaintiff is the termination of her employment. AT&T has provided a legitimate non-discriminatory reason for Plaintiff's termination: her position was eliminated in a department force reduction after she was ranked the lowest of the four DBAs in her workgroup. (Dkt. 25 ¶¶ 11, 13, 15; Rossi Decl. ¶¶ 71-73). It is well-settled that a force reduction is a legitimate, non-discriminatory reason for termination under Section 1981 and WLAD. *Shokri*, 777 F. App'x at 888; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) ("A RIF is a legitimate nondiscriminatory reason for

laying off an employee.").

Because AT&T has articulated a legitimate non-discriminatory reason, Plaintiff must come forward with "specific and substantial evidence" demonstrating that her termination in the 2016 Surplus was a pretext for race, gender or national origin discrimination (under the WLAD) or that her race was a but-for cause of her termination. Plaintiff cannot meet that burden. Indeed, Plaintiff offers nothing more than her own subjective belief that she was a better-performing DBA than the other DBAs on her team who were not selected for the Surplus. (Pl. Dep. 287:13-25, 289:8-10). However, it is well settled that a plaintiff's subjective belief about her performance is irrelevant at summary judgment and fails to raise a genuine issue of material fact. *Shokri*, 311 F. Supp. 3d at 1215; *Hoe Xuan Nguyen v. ING Fin. Advisers LLC*, No. C04-1310RSM, 2006 WL 1075216, at *7 (W.D. Wash. Apr. 21, 2006) (holding that a plaintiff cannot create genuine issue of material fact based on subjective perception of her performance). Plaintiff's 2016 Surplus ratings indicate that she had strong technical skills, but fell behind the other DBAs primarily on leadership. Those ratings are consistent with Mr. Rossi and Ms. Russo's assessment of her performance long before the 2016 Surplus. As early as 2012, Mr. Rossi believed that while Plaintiff had strong technical skills, she was difficult to work with because she was often aggressive and argumentative and did not work cooperatively with the team on deadlines. (Rossi Decl. ¶¶ 18-21). Similarly, Ms. Russo believed that Plaintiff needed to improve her verbal communication skills in group meeting environments because she could be confrontational on team calls, did not appear to listen to other team members, and did not respond productively when questioned by Mr. Hosseini or others on the team. (Russo Decl. ¶¶ 9-10). Indeed, other team members had challenges working with Plaintiff. (Boccardo Decl. ¶¶ 4-8; Kearney Decl. ¶¶ 4-5). In short, Plaintiff responded to the normal challenges of working in a demanding, fast-paced IT environment as if they were personal attacks on her knowledge and expertise, which she attributed without any evidentiary support to her sex, race, and national origin.

Because Plaintiff presents no evidence from which a factfinder could conclude that

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 16
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

AT&T's stated reason for her termination was pretext, her discrimination claims under Section 1981 and WLAD fail as a matter of law.

### 2. Plaintiff's Cannot Establish a Viable Discrimination Claim Based on Her Subjective Perception of "Mistreatment" by Her Coworkers.

Plaintiff has complained generally that she was "mistreated" during her employment. She described this as: "1) "Being set up to fail. That is, being assigned a task that would not be possible to complete within the time and resources allotted, and then being blamed for articulating the necessary parameters, and then blamed again when she could not deliver what she had said was impossible;" 2) "Being denied a leadership position despite working in ways that involved helping and leading others;" 3) "Being denied authority among your colleagues;" 4) "Not having questions answered that were necessary to complete your work;" 5) "Having your work and successes consistently unacknowledged," and 6) "Being called in the middle of the night and berated for not having done tasks that you had not been told to do." (Pl. Dep. 326:12-332:25).

Ultimately, none of these alleged acts constituted a material adverse action under Section 1981 or WLAD, and Plaintiff cannot establish a *prima facie* case of discrimination. Criticism by coworkers, and even a supervisor's refusal to address such criticisms, do not constitute an unlawful employment practice. *Cooper v. Univ. of Wash.*, No. C06-1365RSL, 2007 WL 3356809, at *4 (W.D. Wash. Nov. 8, 2007). Employment discrimination statutes are not civility codes, and they do not insulate plaintiffs from petty work slights and unpleasant interactions with coworkers. *See Crossland v. Wideorbit, Inc.*, No. C18-1422RSL, 2019 WL 172630, at *3 (W.D. Wash. Jan. 11, 2019).[7]

Even if Plaintiff could establish a prima facie case Plaintiff cannot show that her race was the but-for cause of the alleged mistreatment under Section 1981 or that race, gender, or

---

[7] *See also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000) (plaintiff failed to show that she was subject to adverse action based on allegations that her supervisor was uncivil, stared at her in a hostile manner, and was critical of her performance); *Carter-Miller v. Washington*, No. C07-1825RAJ, 2008 WL 4542372, at *1 (W.D. Wash. Oct. 8, 2008) (plaintiff's allegation that coworker gave her orders in the presence of students, thereby eroding her credibility and humiliating her, failed to establish adverse employment action).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 17
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

national origin was a substantial factor in the alleged mistreatment under WLAD. Plaintiff admitted she never heard Mr. Shah or Ms. Russo make any derogatory comments or slurs about her race, gender, or her national origin, and she admitted she did not believe that Mr. Rossi was biased against her based on these factors. (Pl. Dep. 68:19-69:1, 295:12-14, 296:9-13). Further, she has offered no evidence that coworkers not in her protected group did not experience the same workplace pressures and demands.

Plaintiff's only "evidence" supporting her discrimination claims is that she was the only "female Hispanic" in her group and her belief that certain male coworkers didn't respect her because they were Indian. During her deposition, Plaintiff said, "The reasons I was having these problems communicating with Mehdi, I believe, and Uday were more racial and gender-based problems. I – I don't think they're used to a woman with the knowledge necessary to do the work and being able to state when something was or wasn't appropriate and whether it was going to work or not." (*Id.* at 295:24-296:5). Yet other women who worked with Mr. Shah and Ms. Hosseini had no such conflicts with them or felt that they were treated less favorably than Indian males on the team. (Boccardo Decl. ¶¶ 9-10; Kearney ¶¶ 6-7). Beyond her subjective belief that Mr. Shah and Mr. Hosseini did not respect women in the workplace due to their national origin, Plaintiff has offered no actual evidence of bias or discrimination. A plaintiff "must do more than express an opinion or make conclusory statements." *Mayes v. Ohashi*, No. C18-0696 RSM, 2020 WL 1322924, at *2 (W.D. Wash. Mar. 20, 2020) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 105 (1996)). Thus, Plaintiff's discrimination claims based on her alleged "mistreatment" by her supervisor and coworkers should be dismissed.

## C. Plaintiff's Retaliation Claims Under Section 1981 and WLAD Fail as a Matter of Law.

To establish a prima facie case of retaliation under the *McDonnell Douglas* burden shifting framework, the plaintiff must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Shokri, 311 F. Supp. 3d at 1222*. If the plaintiff

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 18
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

can establish a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse action. *Id.* Once the defendant discharges its burden, the plaintiff can only avoid summary judgment by showing that her protected activity was the but-for cause of the adverse action (under Section 1981) or that her protected activity was a substantial factor in the adverse action (under the WLAD). *Id* at 1222-23.

> **1.** **Plaintiff Cannot Establish a Prima Facie Case of Retaliation Because There is No Casual Connection Between a Protected Activity and Her Termination.**

An employee engages in protected activity when she opposes employment practices forbidden by antidiscrimination laws or other practices that she reasonably believed to be discriminatory. *Short v. Battle Ground Sch. Dist.*, 169 Wn. App. 188, 205 (Wn. App. Div. 2 2012). AT&T does not dispute that Plaintiff engaged in protected activity if she filed an EEOC Charge in 2006 and when she made an internal complaint of discrimination in September 2014. AT&T also does not dispute that Plaintiff's termination constitutes a material adverse action. However, there is no causal link between a protected activity and her termination. As an initial matter, Plaintiff's belief in 2014 that a charge filed eight years was the source of retaliation against her is nothing more than speculation. Nor do the undisputed material facts show a causal connection between her September 2014 protected internal complaint and any adverse employment action.

First, there is no temporal proximity between Plaintiff's September 2014 complaint and her termination in December 2016. *See Neely*, 2019 WL 2178648, at *7 (finding no temporal proximity based on five month gap between filing of Plaintiff's EEOC Charge and Plaintiff's selection for reduction in force). Further, Plaintiff's primary complaint was about alleged discrimination by Uday Shah, who ceased to be her supervisor as of December 2014 and had no input into her selection in the 2016 Surplus. (Rossi Decl. ¶¶ 55-56, 65; Dkt. 25 ¶ 12). Plaintiff's subjective belief that any and all employment actions taken by AT&T were motivated by discriminatory or retaliatory animus, without more, fails to establish the requisite causal connection. *McEnroe v. Microsoft Corp.*, No. CV-09-5053-LRS, 2010 WL 4806864, at

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 19
CIVIL ACTION NO.: 2:18-CV-01180

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

*4 (E.D. Wash. Nov. 18, 2010).

> ### 2.   Plaintiff Cannot Show That The Decision to Terminate Her Employment in the Surplus was Pretext for Retaliation.

Even if Plaintiff could establish a *prima facie* case of retaliation, as discussed above, AT&T has proffered a legitimate, non-retaliatory reason for her termination: her ranking as the lowest-performing DBA in Mr. Rossi's organization in the 2016 Surplus. And Plaintiff cannot meet her burden of providing evidence supporting a finding that her protected activities had any role in AT&T's decision to eliminate her position in the 2016 Surplus. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 338 (2013) (plaintiff's ultimate burden is to show that the adverse employment action would not have occurred but for the protected activity); *Allison v. Hous. Auth. of the City of Seattle*, 118 Wn. 2d 79, 84 (1991) (under the WLAD, plaintiff must show that protected activity was a substantial factor in the adverse employment action). Again, Plaintiff has offered nothing more than her subjective belief that she was a better performer than her fellow DBAs and her managers and Team Lead were biased against her, which fails to raise a genuine issue of material fact. *Strickland v. Seattle Cent. Coll.*, No. C18-1073JLR, 2019 WL 7370338, at *10 (W.D. Wash. Dec. 31, 2019) (plaintiff's subjective belief she was more qualified than the candidate selected for her desired promotion failed to raise a triable issue on her WLAD retaliation claim); *see also Mayes*, 2020 WL 1322924, at *7 (plaintiff's retaliation claims "cannot survive summary judgment with unsupported allegations").

> ### D.   Plaintiff Cannot State a Claim for Hostile Work Environment Under WLAD or Section 1981.

Plaintiff asserts in a conclusory fashion that she was subject to a hostile work environment. (Dkt. 1 at ¶ 35). To prevail on such a claim under Section 1981 or the WLAD, Plaintiff must show: "(1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Wooden v. Hammond*, No. 11-cv-5472-RBL, 2013 WL 1187659, at *6

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 20
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

(W.D. Wash. Mar. 21, 2013).

To the extent that Plaintiff relies on the grievances discussed above, they are simply insufficient to support a claim of hostile work environment. First, Plaintiff presents no evidence showing any alleged mistreatment was due to her race, sex, or national origin. She has not alleged any slurs or demeaning comments about any protected characteristic or even evidence that others not in her protected class did not experience the same stressful work environment. Further, the complained-of "mistreatment" simply does not rise to the level of severe or pervasive harassment. Anti-discrimination statutes are not a general civility code. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (alteration omitted).

In *Mangaliman v. Washington State DOT*, this Court considered similar generic allegations of alleged harassment: 1) the plaintiff was allegedly "chewed out" by a supervisor, 2) supervisors scrutinized his conduct; 3) the plaintiff was subjected to extensive performance testing; 4) a supervisor yelled at him after he produced faulty testing results; and 5) supervisors created "an environment where any reasonable person can fail." No. CV11-1591 RSM, 2014 WL 1255342, at *10 (W.D. Wash. Mar. 26, 2014). The plaintiff attempted to connect the alleged harassment to his race, claiming that he was referred to as a "dumb Filipino" on several occasions. *Id.* This Court granted summary judgment in favor of the defendant, holding that the alleged conduct was not sufficiently severe or pervasive to establish an actionable hostile work environment. Here, Plaintiff's allegations of a hostile work environment fall far short of *Mangaliman*, and AT&T is entitled to summary judgment on this claim.

### E. Plaintiff's Interference and Retaliation Claims Under the FMLA and WFLA Fail as a Matter of Law.

Plaintiff asserts that AT&T took adverse actions against her, including her termination, in order to interfere with her FMLA/WFLA rights and to retaliate against her for requesting

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 21
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

FMLA/WFLA leave.[8] (Dkt. 1 ¶ 36 Pl. Dep. 301:11-14). The FMLA makes it unlawful for a covered employer "to interfere with, restrain or deny the exercise of . . . any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1). A plaintiff may assert a claim for interference with her FMLA rights by proving by a preponderance of the evidence that: 1) she requested or took FMLA-protected leave; and 2) her request constituted a "negative factor" in an employment decision. *Urrutia v. BNSF Ry. Co.*, No. C09-215RSM, 2010 WL 4259246, at *4 (W.D. Wash. Oct. 22, 2010).[9]

Plaintiff cannot show that her request for FMLA/WFLA leave was a negative factor in AT&T's decision to terminate her employment. As an initial matter, the evidence shows that far from interfering with Plaintiff's ability to take FMLA leave, Ms. Russo actively worked with Plaintiff to facilitate her ability to take leave to care for her brother. Plaintiff acknowledged that Ms. Russo tried to help Plaintiff navigate the FMLA application process. (Pl. Dep. 254:16-24). Additionally, Plaintiff was selected for the 2016 Surplus based on ratings and rankings that were completed *before* she applied for FMLA leave, thereby undermining any argument that her request for FMLA was a factor in AT&T's decision to terminate her employment. *See* Rossi Decl. ¶¶ 69; Pl. Dep. Ex. 21.  Moreover, Mr. Rossi was unaware of Plaintiff's potential need for leave, nor is there any evidence that Ms. Russo considered Plaintiff's potential need for leave in the future when providing input to Mr. Rossi. (Rossi Decl. ¶ 67; Russo Decl. ¶ 38). Because there is no evidence on which a reasonable jury could rely to conclude that Plaintiff's request for FMLA leave played a negative factor in her termination, Plaintiff's interference claim should be dismissed.

---

[8] The WFLA "mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the FMLA." *Mesmer v. Charter Commc'ns, Inc.*, No. 3:14-cv-05915-RBL, 2016 WL 1436135, at *4 (W.D. Wash. Apr. 12, 2016) (quoting *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013)).

[9] Plaintiff cannot state a claim for retaliation under the leave statutes because she cannot show that she opposed unlawful FMLA practices. *See White v. Burlington N. Santa Fe R.R. Co.*, No. C15-5145 RBL, 2017 WL 750112, at *5 (W.D. Wash. Feb. 27, 2017); *Beritich v. Multicare Health Sys.*, NO. C15-5370BHS, 2016 WL 6298786, at *7 (W.D. Wash. Oct. 27, 2016). Plaintiff's internal complaints exclusively involved what she perceived as discrimination on the basis of her race, gender, and (arguably) national origin and made no reference to rights afforded under the FMLA or WFLA.

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 22
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

**F.  Plaintiff's Claim for Common Law Wrongful Discharge in Violation of Public Policy Fails as a Matter of Law.**

Plaintiff asserts that she acted in furtherance of Washington's public policy by complaining about and opposing race, gender, national origin discrimination and retaliation, requesting leave to care for her brother under the FMLA and WFLA, and caring for a family member with a health condition, and AT&T wrongfully discharged her. (Dkt. 1 ¶¶ 38-39). The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will employment doctrine. *Martin v. Gonzaga Univ.,* 191 Wn.2d. 712, 723 (2018). For the same reasons she cannot state a claim for discrimination or retaliation, she cannot state a claim for wrongful discharge in violation of public policy. Plaintiff has failed to show that her protected activity played any role in AT&T's decision to terminate her employment as part of the 2016 Surplus in violation of Washington public policy established in the WLAD or WFLA. *See Neely*, 2019 WL 2178648, at *8 (granting summary judgment for defendant on wrongful discharge in violation of public policy claim where plaintiff failed to prove that his termination was motivated by discriminatory animus in violation of public policy against discrimination set forth by the WLAD). Accordingly, AT&T is entitled to summary judgment on Plaintiff's wrongful discharge claim.

**G.  Plaintiff's Lost Wages Claims Under RCW 49.48 and 49.52 Should Be Dismissed Because Plaintiff Cannot Show That She Was Entitled to Additional Wages and Was Not Paid.**

Plaintiff claims that AT&T's termination of her employment caused her to lose wages in violation of RCW 49.48 *et seq.* and RCW 49.52 *et seq.* (Dkt. 1 ¶¶ 1, 40). This assertion is frivolous on its face, and AT&T is entitled to summary judgment on these claims. At summary judgment, the burden is on the plaintiff to show what wages were unlawfully withheld. *Busey v. Richland Sch. Dist*., 172 F. Supp. 3d 1167, 1182 (E.D. Wash. 2016) (granting summary judgment in favor of defendant where defendant lawfully terminated plaintiff's employment and defendant's payroll records showed that plaintiff received all wages owed through termination).

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 23
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Plaintiff cannot show that AT&T failed to timely pay her owed wages as required by RCW 49.48.010. Plaintiff's last day of employment was December 28, 2016, and AT&T's payroll records show that Plaintiff was issued her last paycheck on the next scheduled payroll date of January 6, 2017. (Meier Decl. ¶ 7, Ex. A).  As shown herein, Plaintiff's termination was properly terminated due to a reduction in force, and AT&T owed her no further compensation after her last day of employment. Further, because Plaintiff's claim under RCW 49.52 is premised on her allegedly discriminatory or retaliatory termination, AT&T is entitled to judgment as a matter of law because RCW 49.52 does not apply to alleged violations of anti-discrimination statutes.  *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) ("Washington courts have not extended RCW § 49.52.050 to situations where employers violate anti-discrimination statutes. Rather, violations of § 49.52.050 have been upheld where an employer consciously withholds a quantifiable and undisputed amount of accrued pay.")

## IV.   **CONCLUSION**

As shown above, Plaintiff failed to raise a genuine issue of material fact on any of her claims against AT&T. Therefore, AT&T's motion for summary judgment should be granted.

DATED: January 13, 2021.

KILPATRICK TOWNSEND & STOCKTON LLP

By   */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
Susan W Pangborn (*Admitted Pro Hac Vice*)
spangborn@kilpatricktownsend.com
Noelle Abastillas (*Admitted Pro Hac Vice*)
nabastillas@kilpatricktownsend.com
Telephone: (206) 626-7713
Facsimile: (206) 260-8946

*Counsel for Defendant AT&T SERVICES, INC.*

DEFENDANT AT&T SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT - 24
CIVIL ACTION NO.: 2:18-CV-01180

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington, that on the 13th day of January, 2021, the document attached hereto, DEFENDANT AT&T SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF was served on the following persons below via ECF:

Chalmers C. Johnson
Longshot Law, Inc.
PO Box 1575
Port Orchard, WA 98366
425-999-0900
chalmersjohnson@gmail.com

DATED this 13th day of January, 2021.

**Kilpatrick Townsend & Stockton LLP**

By /s/ Gwendolyn C. Payton
Gwendolyn C. Payton, WSBA No. 26752
*Counsel for Defendant AT&T SERVICES, INC.*

CERTIFICATE OF SERVICE - 25