1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

MARIA DEL CARMEN MARTINEZ
PATTERSON,

Case No. C18-1180-RSM

11

Plaintiff,

ORDER GRANTING DEFENDANT
AT&T'S MOTION FOR SUMMARY
JUDGMENT

12

v.

13
14

AT&T SERVICES INC., a Delaware
Corporation,

15
16

Defendant.

17

## I.        INTRODUCTION

18
19        This matter comes before the Court on Defendant AT&T Services Inc. ("AT&T")'s

20  Motion for Summary Judgment.  Dkt. #47.  Plaintiff Maria del Carmen Martinez-Patterson

21  opposes AT&T's motion.  Dkt. #58.  Parties have not requested oral argument, and the Court

22  finds it unnecessary to resolve the instant motion.  Having reviewed Defendant's Motion,

23  Plaintiff's Response, AT&T's Reply, the declarations and exhibits attached thereto, and the

24  remainder of the record, the Court ORDERS that Defendant AT&T's Motion for Summary

25  Judgment is GRANTED.

26  //

27  //

28  //

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 1

## II.   BACKGROUND

Plaintiff is a Hispanic woman of Filipino and Spanish heritage who worked as a Database Administrator in Washington for AT&T from 2000 until her termination in December 2016. Plaintiff brings this action against AT&T under 42 U.S.C. § 1981, the Washington Law Against Discrimination ("WLAD"), the Family Medical Leave Act ("FMLA"), and the Washington Family Leave Act ("WFLA").  Dkt. #1 at ¶ 1.  Plaintiff also claims wrongful discharge and lost wages under RCW 49.52 and RCW 49.48.  *Id.*

### A.  2006 EEOC Charge

In 2006, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against AT&T predecessor company, Cingular.  Dkt. #52 at 9.  Plaintiff has not produced a copy of the 2006 charge or any settlement agreement.  Dkt. #52 at 8.  She states that she brought the charge after accidentally finding out that her job title had been changed following discriminatory behavior.  *Id.* at 9.  The job title change did not result in any change in pay.  The EEOC charge was resolved by changing her job title from DBA to DBA 2.  Dkt. #58-1 at 7:15-21.

### B.  Complaints of Discriminatory Treatment from 2011-2016

In 2011, Plaintiff moved to IT Director John Rossi's organization, where she worked with three other Database Administrators: Praveen Kollipara, Anstin Hall, and Sohail Khan.  Dkt. #53 at ¶¶ 9-11.  From 2011 until December 2014, Plaintiff reported directly to Uday Shah, an Associate Director-Technology, who reported to Mr. Rossi.  *Id.* at ¶ 16.  Mr. Shah was based in Illinois and Mr. Rossi continues to be based in New Jersey.  Plaintiff never met Mr. Shah in person, communicating only by phone and computer messaging.  Dkt. #52 at 12.  In or around March 2012, the Senior Tech Team Lead reporting to Mr. Shah became vacant, and Plaintiff

1
2
3

emailed Mr. Rossi and Mr. Shah to express interest in the position.  Mr. Shah determined that he would not fill that position and would instead hire another Database Administrator for the team. Dkt. #53 at ¶¶ 24-25.

4
5
6
7
8
9
10
11
12
13
14
15

In October and November 2012, Plaintiff complained to Mr. Rossi that Mr. Shah was sending her demeaning emails and text messages.  *Id.* at ¶¶ 27-28.  Plaintiff believed that because Mr. Shah was Indian, he did not respect women.  *Id.* at ¶ 30.  Plaintiff provided the emails and text messages from Mr. Shah that she found demeaning, but Mr. Rossi found nothing demeaning or unprofessional—rather, he believed that Mr. Shah's messages "seemed to be routine discussions, requests for clarification, or instructions regarding various projects, tasks, and deadlines."  *Id.*  Nevertheless, Mr. Rossi forwarded Plaintiff's concerns to AT&T Human Resources ("HR") to request guidance.  *Id.* at ¶¶ 31-32.  Mr. Rossi followed up with Plaintiff on November 26, 2012, at which point she reported that "things were better" between her and Mr. Shah.  *Id.* at ¶ 35.

16
17
18
19
20
21
22
23

Mr. Rossi checked in again with Plaintiff on January 18, 2013, and she reported there were "no further incidents" with Mr. Shah.  *Id.* at ¶ 36.  However, she stated that she was having difficulty dealing with Team Lead Mehdi Hosseini, who was responsible for coordinating the work of Database Administrators, developers and analysts and determining project timelines.  *Id.* at ¶¶ 37-38.  Plaintiff reported that Mr. Hosseini was singling her out, berating her and taunting her. Dkt. #58-1 at 13; Dkt. #58-2 at ¶ 1.

24
25
26
27
28

On July 18, 2013, Plaintiff emailed Mr. Rossi again about Mr. Hosseini. Dkt. #53 at 12. Plaintiff's email expressed concern that she had "no voice" and "very little or no influence in the technical direction of the R12 project design, strategy and content.  I don't know where this comes from but it is a message that I have been given more than once from Mehdi . . . I feel that the

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

expectation is that we just do what we are told, with little or no influence on technical decisions .
. . ." *Id.*  Mr. Rossi forwarded the email to Debbie Russo, Hosseini's direct supervisor.  Ms.
Russo responded that she had worked with Mr. Hosseini for several years and "have never found
him to be anything but open to all opinions and ideas." *Id.* at 14.  She also directed Plaintiff to
"feel free to come directly to me with any issues with my team members" and hoped they could
"move forward on this without further incident." *Id.* at 14-15.  Plaintiff viewed Ms. Russo's
response as "completely side-stepp[ing] the issue by calling what he was doing 'challenging' me.
I was reporting his abusive and hostile manner towards me because I am a woman, not the fact
that he disagreed with work related issues." Dkt. #58-2 at ¶ 1.  She took Ms. Russo's message to
mean that Ms. Russo "would not appreciate or allow any further attempts to make complaints
about the mistreatment." *Id.*

On September 1, 2014, following a Fireside Chat with AT&T's former Executive Director
held for AT&T employees, Plaintiff emailed Mr. Rossi regarding concerns she had about a
"pattern of exclusion" by Indian men on her team.  Dkt. #53 at 17-20.  This pattern included a
downgraded performance rating from her 2011 "Exceeds" rating, scolding from Mr. Hosseini,
and minimization of her contributions by the Senior Technical Lead.  Plaintiff and Mr. Rossi met
to discuss her email, during which Plaintiff also raised her concern that her 2006 EEO claim was
"following her" and preventing her from applying for other job opportunities at AT&T.  *Id.* at ¶¶
43-45.  During that meeting, Plaintiff stated her belief that both Mr. Shah and Mr. Hosseini treated
her differently because they were Indian and did not respect her because she is a woman.  *Id.* at
¶¶ 47-51.

Mr. Rossi reported Plaintiff's complaint to Marybeth Dunne, AT&T's Lead EEO
Consultant, who investigated the concerns raised by Plaintiff.  Dkt. #54 at ¶ 4.  Ms. Dunne

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 4

requested a meeting with Plaintiff, and on October 8, 2014, they met to discuss Plaintiff's concerns. After meeting with Plaintiff, Ms. Dunne drafted a report summarizing her conclusions ("the EEO Report"). The EEO Report determined that no EEO policy violation was substantiated because Plaintiff could not articulate specific examples of when or how Mr. Shah and/or Mr. Hosseini discriminated against her based on her race, national origin or gender. Dkt. #57 at 2 (sealed). The EEO Report likewise concluded that Plaintiff's retaliation claim based on her 2006 claim was unsubstantiated, given that Plaintiff's leadership team had no knowledge of the 2006 complaint. *Id.*

On December 16, 2014, a business reorganization resulted in Mr. Shah and several team members being moved out of Mr. Rossi's organization, and Ms. Russo became the new supervisor for Plaintiff, Mr. Kollipara, Mr. Hall, and Mr. Khan. *Id.* at ¶¶ 55-56. In mid-2015, Plaintiff received a midterm evaluation that rated her Business Result Rating as "Fully Meets" and Leadership Rating as "Meets Some." Dkt. #58-2 at 12. In August 12, 2015, Plaintiff submitted a rebuttal to Ms. Russo for her Midterm Evaluation, stating that this was a "lower rating than ever before for leadership skills" and was based on "inadequate experience of the rating authority" that "has at its heart a self-fulfilling goal of denying any kind of positive trajectory I may have with the company . . . ." *Id.* at 11. Her rebuttal further stated, "I am told I should take a 'softer' stance. . . . This I suspect is because the men who are in this group, all culturally unsuited to listening to a Hispanic female address concerns they have not considered, are unhappy they have to listen to me." *Id.* Her rebuttal references an instance when she was "humiliated in a group meeting before my peers and my manager, by a man from a culture other than [] the United States . . . I was cut off due to technical problems but found myself shaking at the belittling, bullying and put down I was forced to endure from a superior . . . ." *Id.*

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 5

On January 28, 2016, Plaintiff received a year-end review from Ms. Russo reporting her overall performance rating as "Meets Some." *Id.* at 13. Ms. Russo commented that Plaintiff "has very strong technical skills and welcomes challenges" but needed to strengthen her communication skills—especially in group environments. *Id.* ("Members of various project teams have reported that [Plaintiff] needs to improve the way she handles interactions within group meeting settings, concentrating on effective listening as well as non-confrontational presentation of ideas.").

On January 30, 2016, Plaintiff submitted a rebuttal to the year-end evaluation. She believed the downgrade on her evaluation was due "to gender and cultural differences between the United States and the country of origin for many of the men [she was] required to work with, and forms the foundation for the claim [she] lack[s] communication skills." *Id.* at 14. Her rebuttal elaborated that men on her project teams would "publicly and privately belittle, intimidate and taunt" her, and stated that she has "good skills with the men from Western Civilization, and many cultures. It is just a regular problem with the Indian world view, plus some other regions from time to time about the role of women . . . I am not valid to them. Challenge is apparently not appropriate." *Id.* She identified the men she took issue with as "the R12 project one Sr. Tech lead;[1] and from ESAR, one System Engineer." *Id.* Her rebuttal also claimed a "pattern of retaliation" wherein she raised these complaints in 2014 and believed "this year's mid-year rating and end of year rating are the result." *Id.*

## C. FMLA Request

In early March 2016, Plaintiff's brother was diagnosed with brain cancer. Dkt. #58-1 at 15:21-24. In August 2016, Plaintiff asked Ms. Russo for information on applying for FMLA

---

[1] In her declaration, Plaintiff clarifies that the Senior Technical Lead referred to in her January 30, 2016 rebuttal is Mr. Hosseini. Dkt. #58-2 at ¶ 3.

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 6

leave to care for her brother.  Dkt. #58-2 at ¶ 4; Dkt. #51 at ¶ 25.  Ms. Russo contacted HR for guidance and was told that FMLA was not available for care of siblings.  *Id.* at ¶ 26.  On August 12, 2016, Ms. Russo notified Plaintiff that FMLA did not appear to cover care for a sibling.  Dkt. #51 at 17.  Her email also provided Plaintiff with two website links and two documents with more information.  On August 16, 2016, Plaintiff responded thanking Ms. Russo for investigating her leave options and reported that through research, she found that she may qualify for leave under "in loco parentis."  Dkt. #51 at 17.  Plaintiff asked if Ms. Russo could check if this was "on the same page with AT&T policy," to which Ms. Russo responded that she discussed with HR and determined that for Plaintiff to request leave under "in loco parentis," Ms. Russo would need to complete the form while Plaintiff would need to fax to HR a copy of the Legal and/or Medical Power of Attorney and a doctor's letter.  *Id.* at 15-18.

Ms. Russo did not hear from Plaintiff again until October 16, 2016, when she received an email from Plaintiff stating that she was "officially" requesting FMLA leave for the second week of December 2016 to care for her brother.  Dkt. #51 at ¶¶ 31-34.  Ms. Russo completed the FMLA Eligibility Form on behalf of Plaintiff and submitted the request to HR on October 25, 2016.  HR notified Ms. Russo on October 31, 2016 that Plaintiff's request for leave was submitted too early—more than 30 days before the anticipated leave—and should be resubmitted on or after December 5, 2016.  Ms. Russo shared the response with Plaintiff and said she would re-submit the request in December.  *Id.*

**D. Force Reduction and Plaintiff's Termination**

In late 2016, AT&T's Digital Experience Department had a reduction in force.  Dkt. #25 at ¶¶ 4-7.  Of the 284 employees in the Department, 169 were selected for the 2016 Surplus.  *Id.* at ¶¶ 17-18.  The 2016 Surplus was comprised of ten Affected Work Groups ("AWGs"), four of

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 7

which were not outsourced but were subject to a headcount reduction.  AWG 1 was the group of four Database Administrators, including Plaintiff, who reported to Ms. Russo.  *Id.* at ¶¶ 7-9.

On October 4, 2016, Chris Lintner, an AT&T Human Resources Business Partner, requested that Mr. Rossi and other Directors provide ratings and ranking information for certain employees in their organization regarding a force reduction effort.  Dkt. #53 at ¶¶ 57-64.  Mr. Rossi and Ms. Russo testified that they had no input into how and whether the headcount in AWG 1 would be reduced.  *Id.* at ¶ 72; Dkt. #51 at ¶ 36.  After completing a training course on the assessment project, employees received ratings of 1 (Lowest) to 5 (Highest) in four areas: performance, leadership, skills, and experience.  The Directors, including Mr. Rossi, were required to complete their assessments by October 11, 2016.  Dkt. #53 at ¶ 63.  Mr. Rossi testified that at the time he completed his assessment, he was not aware of Plaintiff taking leave or planning to take leave to care for her brother and that he did not consider those factors in rating Plaintiff or the other Database Administrators.  *Id.* at ¶ 67.  Ms. Russo likewise testified that she did not consider Plaintiff's plan to take leave when she made her ratings.  Dkt. #51 at ¶ 38.  The Database Administrators in AWG 1 were rated and ranked in the following order, from highest to lowest: Praveen Kollipara, Anstin Hall, Sohail Khan, and Plaintiff.  Dkt. #56 (sealed).

On October 27, 2016, the Business Unit notified Mr. Rossi that it determined that surplus conditions existed and would eliminate certain positions.  Dkt. #53 at ¶¶ 71-72. Sixteen employees, including Plaintiff, were impacted.  Ms. Russo and Mr. Rossi met with Plaintiff the next day, October 28, 2016, to notify her that her position was being eliminated as part of the surplus.  *Id.* at ¶ 73.  Both Mr. Rossi's and Ms. Russo's positions were also eliminated, but they were able to secure new roles within AT&T.  *Id.* at ¶ 74; Dkt. #51 at ¶ 41.  Plaintiff applied for four other jobs within AT&T but was not selected, and her termination was effective on December

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 8

28, 2016.   Dkt. #58-1 at 37:12-24; Dkt. #25 at ¶ 15.   Plaintiff does not claim that any discriminatory or retaliatory factor led to her not being selected for these internal positions.  *Id.* Plaintiff was offered severance in exchange for signing a release of claims against AT&T, which she declined.  Dkt. #58-2 at ¶ 6.

On August 10, 2018, Plaintiff filed this action against AT&T.  Dkt. #1.  AT&T moved for summary judgment on January 13, 2021, which Plaintiff opposes.  Dkts. #47, #58.

### III.      DISCUSSION

#### A.  Motion to Seal

As an initial matter, the Court considers Defendant's unopposed Motion to Seal, Dkt. #55. Defendant moves to seal two exhibits filed in support of its Motion for Summary Judgment: (1) employee rankings and ratings for the Database Administrators in AWG 1, Dkt. #56; and (2) the EEO Report drafted by Ms. Dunne, which attaches Plaintiff's notes to Ms. Dunne, the 2013 Management Performance Plan ratings given by Mr. Shah, and notes by Ms. Dunne memorializing her conversation with Plaintiff, Dkt. #57.

"There is a strong presumption of public access to the court's files."   Local Rules W.D. Wash. LCR 5(g).  To overcome this strong presumption, a party seeking to seal a judicial record must meet the "compelling reasons" standard.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).  Under this "stringent standard," a court may only seal records when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture."  *Id.* (quoting *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1179 (9th Cir.2006)) (internal quotations omitted).

The Court agrees that the sealed documents contain sensitive and confidential personal evaluations and investigations of complaints about employees who are not parties to this matter.

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 9

Given that disclosure of these documents could subject these non-party employees to annoyance, embarrassment, and/or oppression, the Court GRANTS Defendant's Motion to Seal.

## B. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law. *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

The non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the*

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 10

*Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  However, where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed.  Fed. R. Civ. P. 56(e).  As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted).  The Court need not "comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *Keenan*, 91 F.3d at 1279 (the court will not "scour the record in search of a genuine issue of triable fact").

### C.  Section 1981 and WLAD Discrimination Claims

Plaintiff alleges discrimination on account of race, national origin, and gender in violation of § 1981 and the WLAD.  Dkt. # 1 at ¶ 2.  Section 1981 prohibits discrimination in the making and enforcement of contracts on the basis of race or national origin.  *Flores v. City of Westminster*, 873 F.3d 739, 752 (9th Cir. 2017); 42 U.S.C. § 1981 ("The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").  Although Defendant does not raise the issue in its briefing, the Ninth Circuit has held that Section 1981 authorizes a discrimination claim based on race but "does not provide a claim based on sex discrimination or sexual harassment—not even when the sexual harassment or discrimination is allegedly intertwined with racial discrimination."  *Dickerson v. Cal Waste Sols.*, No. C 08-03773 WHA, 2009 WL 2913452, at *5 (N.D. Cal. Sept. 8, 2009) (citing *Jones v. Bechtel,* 788 F.2d 571, 574 (9th Cir. 1986)).  Nevertheless, since Plaintiff can base her claim on the racial aspect of the discrimination, *see Jones,* 788 F.2d at 574, the Court will proceed to analyze her Section 1981

discrimination claims.  Furthermore, the WLAD bars discharge or discrimination in the terms or conditions of employment on account of sex, race or national origin.  RCW 49.60.180.

Regarding the applicable limitations period for Plaintiffs' claims, Plaintiff does not dispute that claims under 42 U.S.C. § 1981 and the WLAD are governed by four-year and three-year limitations periods, respectively.  *See Jones v. King Cty. Metro Transit*, No. C07-319Z, 2008 WL 2705138, at *10 (W.D. Wash. July 9, 2008).  Because this action was commenced on August 10, 2018, Plaintiff's Section 1981 claims based on actions or events that occurred before August 10, 2014 are time-barred, while her WLAD claims based on actions or events that occurred before August 10, 2015 are time-barred.  *Id.*[2]

Since there will rarely be direct evidence of discrimination, discrimination claims are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837–38 (9th Cir. 2006) (affirming that Title VII substantive standards apply to a § 1981 claim); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wash.2d 516, 404 P.3d 464, 470–71 (2017) (applying *McDonnell Douglas* framework to claims under the WLAD).  Because Washington courts look to federal law in interpreting the WLAD, *see id.*, the Court will consider this motion under federal law, considering Washington case law where appropriate.

Under *McDonnell Douglas*, a plaintiff bears the initial burden of establishing a prima facie case by raising an inference of discrimination—a "presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981).  After this prima facie case is made, the burden "then shifts to the defendant to

---

[2] Plaintiff's Response misstates that Plaintiff filed this lawsuit on October 9, 2018, which was the date AT&T filed its Answer.  *See* Dkt. #13.

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 12

articulate a legitimate nondiscriminatory reason for its employment decision." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986)).  If the defendant succeeds, then to defeat summary judgment, the plaintiff must demonstrate that the "articulated reason is a pretext for unlawful discrimination by 'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Aragon v. Republic Silver State Disposal, Ind.*, 292 F.3d 654, 658–59 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quotations and citation omitted). "Although intermediate burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

   *i.*   *Plaintiff's Prima Facie Case*

   An inference of discrimination may be established "in whatever manner is appropriate in the particular circumstances."  *Diaz v. Am. Telephone & Telegraph*, 752 F.2d 1356, 1361 (9th Cir. 1985).  In disparate treatment cases, the inference is often established by the plaintiff showing that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she was subject to an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  Plaintiff does not appear to dispute that the disparate treatment test applies here.

   The Court finds that Plaintiff has sufficiently demonstrated an inference of discrimination as to her ratings in AWG 1 and her selection for termination.  AT&T does not dispute that Plaintiff, as a Hispanic female with Filipino and Spanish heritage, is a member of a protected

class, that she was qualified for her position as Database Administrator, that she suffered an adverse employment action when she was terminated, and that similarly situated employees outside the protected class—here, the remaining Database Administrators in AWG 1—were not terminated.  Furthermore, Plaintiff's low rating in AWG 1 directly led to her termination and therefore also constitutes an adverse employment action.  For that reason, the burden shifts to AT&T to provide a legitimate, non-discriminatory reason for her low rating in AWG 1 and her termination. !

Although the Complaint only identifies termination as a specific adverse employment action taken by AT&T, *see* Dkt. #1 at ¶¶ 35-36, the Court finds it necessary to address Plaintiff's other allegations of mistreatment by supervisors and colleagues AT&T.  It is well-established that "[n]ot every employment decision amounts to an adverse employment action." *Strother v. S. California Permanente Med. Grp.,* 79 F.3d 859, 869 (9th Cir. 1996), *as amended on denial of reh'g* (June 3, 1996).  Indeed, courts have found no adverse employment decision where the employee was not demoted, placed in a worse job, given additional responsibilities, or lost benefits.  *See id.* at 869, n.12 (collecting cases).

Here, Plaintiff claims mistreatment from Mr. Shah and Mr. Hosseini, including being verbally berated, taunted, and laughed at, and given poor performance reviews.[3]  AT&T argues that none of these alleged acts constituted a material adverse action under Section 1981 or WLAD necessary to establish a *prima facie* case of discrimination.  Dkt. #47 at 17.  Plaintiff does not meaningfully dispute AT&T's argument in her response, instead focusing only on the termination issue.  *See generally* Dkt. #58.  The Court agrees with AT&T.  Generalized and conclusory allegations of criticism by coworkers do not constitute adverse employment actions for purposes

---

[3] To the extent Plaintiff references incidents occurring before August 10, 2014, these events are outside the applicable limitation periods for Section 1981 and the WLAD.

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 14

of a Section 1981 or WLAD claim.  *See, e.g.*, *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112 (9th Cir. 2000) (general allegations that supervisor was uncivil, critical, and stared at plaintiff in a hostile manner insufficient to establish adverse employment action); *Carter-Miller v. Washington*, No. C07-1825RAJ, 2008 WL 4542372, at *1 (W.D. Wash. Oct. 8, 2008) (claim that colleague eroded plaintiff's credibility and humiliated her by giving orders in front of students insufficient to establish adverse employment action).  Furthermore, Plaintiff has provided no evidence to raise the inference that her earlier performance reviews had any impact on her rating in the October 2016 assessment for AWG 1.  *Cf. Neely v. Boeing Co.*, No. C16-1791-JCC, 2019 WL 2178648, at *7 (W.D. Wash. May 20, 2019), *aff'd*, 823 F. App'x 494 (9th Cir. 2020) (plaintiff's poor score on performance evaluation constituted adverse employment action since it contributed to eventual termination).  For these reasons, Plaintiff has failed to demonstrate a prima facie case of discrimination beyond her October 2016 rating in AWG 1 and termination.

ii.     *Defendant's Legitimate Business Reasons*

The record establishes that AT&T had legitimate business reasons for Plaintiff's termination.  AT&T has shown that Plaintiff's position was eliminated as part of a force reduction resulting from her ranking as the lowest of the four Database Administrators in AWG 1.  Dkt. #25 at ¶¶ 7-9; Dkt. #53 at ¶¶ 71-72; Dkt. #56 (sealed).  A force reduction is a legitimate, non-discriminatory reason for termination under Section 1981 and the WLAD.  *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1212–13 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019).  Furthermore, both Mr. Rossi and Ms. Russo testified that they had no input into how headcount in AWG 1 would be reduced and that they, too, had their positions eliminated as part of the force reduction.  Dkt. #53 at ¶¶ 72-74; Dkt. #51 at ¶¶ 36, 41.

AT&T also offers legitimate reasons for Plaintiff's low ranking in the assessment for the force reduction.  AT&T provides consistent evidence from Plaintiff's supervisors and colleagues that people besides Indian males had difficulty working on projects with Plaintiff due to her defensiveness and combativeness.  In addition to Plaintiff's 2015 mid-year and end-reviews from her supervisor, which noted that her communication skills in group environments could be improved, AT&T offers evidence from other colleagues expressing the same concerns.  Senior Business Manager Jill Boccardo, who worked with Plaintiff for a year before Plaintiff's termination, testified that Plaintiff had "very strong technical skills" but would hang up the phone and refuse to accept any messages if the team chose not to go with her desired path, or if she didn't like what was being discussed. Dkt. #49 at ¶¶ 3-4.  Principle Software Delivery Project Manager Jane Kearney, who worked with Plaintiff from June until November 2012, likewise noted that Plaintiff "had competent technical skills and "was a hard worker," but Kearney often felt as if [she] had to walk on eggshells around [Plaintiff]" and was careful in her dealings due to Plaintiff's volatility.  Like Boccardo, Kearney reported that Plaintiff would hang up the phone and refuse to talk if she became upset during a call.

### iii.    Pretext for Unlawful Discrimination

Because AT&T has offered legitimate business reasons for Plaintiff's assessment rating and termination, the burden shifts back to Plaintiff to demonstrate that those reasons are merely a pretext masking intentional discrimination. Pretext can be established by showing "that a discriminatory reason more likely motivated the employer" or "that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.  A plaintiff may rely on direct evidence which proves discriminatory animus on its own—typically clearly discriminatory statements or actions—or circumstantial evidence which "requires an additional inferential step

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 16

to demonstrate discrimination." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). "'[V]ery little' direct evidence of [a] discriminatory motive is sufficient." *Winarto v. Toshiba America Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). But where circumstantial evidence is used, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (citations omitted).

Plaintiff has not introduced evidence sufficient to raise a material dispute of fact that AT&T's reasons for her AWG rating or termination were merely pretext. With respect to the AWG 1 ratings, Plaintiff provides no evidence that the rankings are unworthy of credence. Plaintiff's rebuttals to her mid-year and end-of-year evaluations deny that Plaintiff lacks communication and leadership skills, *see* Dkt. #58-2 at 11-13, but it is well-established that "an employee's subjective belief about [her] performance is not relevant and does not alone raise an issue of material fact." *Shokri*, 311 F. Supp. 3d at 1215; *Aragon*, 292 F.3d at 660. Nothing in the record contradicts the assessments by her superiors and colleagues that she was combative in meetings and would hang up the phone and refuse to discuss an issue if someone disagreed with her.

Regarding her termination, Plaintiff provides no direct evidence contradicting AT&T's claim that her position was eliminated as part of a work force reduction effort. Instead, Plaintiff's argument for pretext hinges entirely on an email exchange between another Database Administrator, Anstin Hall, and David Whittington, who was in charge of communicating information regarding workforce reduction procedures. On October 17, 2016, Mr. Hall asked Mr. Whittington whether another wave of reductions was coming on October 28, 2016. Dkt. #58-2 at 17-18. Mr. Whittington responded the same day that there would be a "small reduction then,"

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 17

but "all have been notified already if impacted." *Id.* The parties agree that Plaintiff was not notified that she was part of the 10/28 reduction until that same day. Plaintiff argues that based on this email exchange, and the fact that she was the only one in her group to be terminated, a reasonable juror could conclude that she was not originally subject to the reduction. For that reason, she argues, her ratings and AT&T's force reduction effort were merely a pretextual excuse to terminate her.

The email communication between Mr. Whittington and Mr. Hall is insufficient to raise a genuine dispute as to whether AT&T's legitimate business reasons were a pretext for intentional discrimination. Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (citing *Reeves*, 530 U.S. at 146–47); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."). AT&T's explanation as to Plaintiff's ratings and termination is internally consistent and believable. Ms. Russo and Mr. Rossi testified that they were both unaware of Plaintiff's termination until October 27, and that Ms. Russo was also unaware of her own designation for surplus until the same day as Plaintiff. *See* Dkt. #53 at ¶¶ 71-72; Dkt. #51 at ¶ 39. This evidence suggests that Mr. Whittingon was either confused or misinformed when he replied to Mr. Hall. When viewed in the light most favorable to Plaintiff, Mr. Whittington's email—reporting to Mr. Hall that affected individuals would have known about their termination before October 28—amounts to weak circumstantial evidence. Where there is only a "weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. *Reeves*, 530 U.S. at 148. Such is the case here.

Finally, the Court notes that under the WLAD, Plaintiff is only required to show "that a reasonable juror could find that discrimination was a *substantial factor* in the employer's adverse employment action." *Scrivener v. Clark Coll.*, 334 P.3d 541, 544 (Wash. 2014) (citing *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 94 P.3d 930 (2004)) (emphasis added). Given that Plaintiff cannot demonstrate unlawful discrimination on the record, the Court need not consider the differences between the WLAD and § 1981. *Shokri*, 311 F. Supp. 3d at 1221.

### D.  Hostile Work Environment

To establish a Section 1981 hostile work environment claim, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Wooden v. Hammond*, No. 11-CV-5472-RBL, 2013 WL 1187659, at *6 (W.D. Wash. Mar. 21, 2013) (quoting *Vasquez*, 349 F.3d at 642) (internal quotations omitted).

WLAD is similar for elements (1) through (3) but includes an additional requirement that management either knew or should have known of the hostility or participated in it. *Woods v. Washington*, No. C10-117RSM, 2011 WL 197587, at *2 (W.D. Wash. Jan. 19, 2011), *aff'd*, 475 F. App'x 111 (9th Cir. 2012) (citing RCW 49.60.180(3)). Furthermore, WLAD—unlike Section 1981—also encompasses claims for gender discrimination based on hostile working environment. *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1080 (W.D. Wash. 2014) (collecting cases).

Whether an environment constituted a hostile work environment is determined by looking at the totality of the circumstances, including the frequency of the harassing conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 19

utterance, and whether it unreasonably interfered with an employee's work performance. *Id.*; *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993). Here, Plaintiff has presented no evidence of conduct that could be construed as racial or sexual in nature. Regarding the conduct at issue, she presents only generalized complaints of mistreatment, including being "singled out," "taunted," and "verbally beaten" by Mr. Hosseini and intimidated by Ms. Russo after complaining about Mr. Hosseini's behavior. Courts have found that generalized complaints of mistreatment without specific factual allegations are insufficient to support a claim for hostile work environment. *See, e.g.*, *Vasquez*, 349 F.3d at 642 (granting summary judgment dismissal of hostile work environment claim where plaintiff claimed that supervisor "continually harassed him but provide[d] specific factual allegations regarding only a few incidents.").

Given Plaintiff's vague and generalized assertions of mistreatment with no apparent connection to her race or gender, no reasonable juror could conclude that Plaintiff's environment constituted a hostile work environment under Section 1981 or the WLAD. Accordingly, the Court GRANTS summary judgment in favor of AT&T on Plaintiff's hostile work environment claims.

**E.  Section 1981 and WLAD Retaliation Claims**

Plaintiff also claims retaliation by AT&T in response to her filing an EEOC charge in 2006 and complaining of discriminatory conduct thereafter. Dkt. # 1 at ¶¶ 13, 18, 23-25, 35. AT&T does not dispute that Plaintiff's 2006 filing of an EEOC charge and her 2014 internal complaint against Mr. Shah constitute protected activities. Dkt. #47 at 19. Retaliation claims are also considered under the burden shifting framework of *McDonnell Douglas*, wherein plaintiff must state a prima facie case of retaliation by proving (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Surrell v. Cal. Water Service Co.*, 518 F.3d 1097–98 (9th Cir. 2008). If established, the

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 20

burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions, at which point the plaintiff must produce evidence showing that the stated reasons were merely pretext for retaliation. *Id.* "Because Washington courts look to interpretations of federal law when analyzing retaliation claims," the Court examines Plaintiff's claim under federal law. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (citing *Graves v. Dept. of Game*, 76 Wash. App. 705, 887 P.2d 424 (1994)).

Although Plaintiff urges the Court to follow a "line of Ms. Russo's retaliatory reactions to Ms. Martinez-Patterson's continuing complaints," Dkt. #58 at 15, Plaintiff has only established two adverse employment actions by AT&T: her ratings assessment for the force reduction and her selection for surplus in October 2016. Plaintiff's general claims of "hostility" by Ms. Russo and her mid-year and year-end performance ratings do not amount to adverse employment actions where she suffered no consequences such as demotion or lost salary or benefits. *Strother*, 79 F.3d at 869. To the extent Plaintiff viewed certain communications or conversations with Ms. Russo as threatening or intimidating, "[w]ritten warnings are generally 'not adverse employment actions where they do not materially affect the terms and conditions of employment.'" *Neely*, 2019 WL 2178648, at *6 (quoting *Sanchez v. California*, 90 F. Supp. 1036, 1056 (E.D. Cal. 2015)).

Based on the record, no reasonable juror could conclude that Plaintiff's ratings or selection for surplus in October 2016 were a result of her EEOC claim filed 10 years earlier or her 2014 complaint made thereafter. "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). Plaintiff's mere belief that her ratings and termination were motivated by retaliatory animus do not establish a causal connection between the protected activities and her ratings and/or ultimate termination. The

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 21

ratings assessment process which led to her termination did not begin until more than two years after Plaintiff submitted her internal complaint, while the gap between her EEOC complaint and termination was even longer.  Given this significant time delay, and without any evidence of a causal connection between the protected activities and her ratings and termination, Plaintiff cannot satisfy the causation element for her retaliation claim.  *See Nelson*, 2019 WL 2178648, at *7 (seven months insufficient); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases where courts held that three-month and four-month gaps were insufficient).  Accordingly, summary judgment in favor of AT&T is appropriate on Plaintiff's retaliation claims.

### F.  FMLA and WFLA Claims

The FMLA provides a cause of action for an employee whose employer has violated the statute by interfering with, restraining, or denying the employee's attempt to exercise "any right provided under this subchapter." 29 U.S.C. §§ 2615(a)(1).  Likewise, the FMLA makes it unlawful for employers to retaliate or discriminate against a person for opposing a violation of their FMLA right to leave.  29 U.S.C. § 2615(a)(2); *Sanders*, 657 F.3d at 777.  AT&T argues, and Plaintiff does not dispute, that Plaintiff has provided no evidence that she opposed any unlawful FMLA practices during her employment at AT&T.  Dkt. #47 at 22, n.9.  The Court agrees.  Accordingly, Plaintiff's FMLA claims are properly construed as interference claims under Section 2615(a)(1).  The WFLA "mirrors its federal counterpart and provides that courts are to construe its provisions in a manner consistent with similar provisions of the FMLA." *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013) (quoting *Washburn v. Gymboree Retail Stores, Inc.,* 2012 WL 5360978, *7, 2012 U.S. Dist. LEXIS 156240, *21 (W.D. Wash. Oct. 30, 2012)) (internal quotations omitted).

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Interference under Section 2615(a) has been interpreted broadly to include not only denial of FMLA rights, but also instances where an employer discouraged an employee from using FMLA leave, retaliated against an employee for exercising or attempting to exercise FMLA rights, or "otherwise caused the employee to suffer an adverse employment action as a consequence of taking FMLA leave."  *Bushfield v. Donahoe,* 912 F.Supp.2d 944, 955 (D. Idaho 2012)) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125, n. 11 (9th Cir. 2001)). The elements of a FMLA interference claim are (1) an entitlement to FMLA leave; (2) an adverse action by Plaintiff's employer, which interfered with Plaintiff's right to take FMLA leave; and (3) a showing that the employer's adverse action was related to the exercise, or attempt to exercise, FMLA rights.  *Castellano v. Charter Commc'ns, LLC*, No. 3:12-CV-05845-RJB, 2013 WL 6086050, at *11 (W.D. Wash. Nov. 19, 2013) (citing *Bachelder,* 259 F.3d at 1124–26 (9th Cir. 2001)).

15
16
17
18
19
20
21
22
23
24

As an initial matter, FMLA claims must generally be brought within two years "after the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  The two-year limitations period is extended to three years for a willful violation, meaning the employer knowingly or recklessly disregarded the employee's rights.  *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020); 29 U.S.C. § 2617(c)(2).  For that reason, to the extent Plaintiff claims FMLA violations based on events that occurred before August 2016, such violations must be willful—not merely negligent—in order to survive the limitations bar.

25
26
27
28

Plaintiff's arguments for FMLA interference are not entirely clear.  However, the Court deciphers two separate arguments: first, that Ms. Russo interfered with Plaintiff's right to take FMLA leave through providing false information, preventing her from communicating with HR,

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 23

and imposing unnecessary paperwork requirements; and second, that her AWG rating and termination were retaliation by AT&T for her attempt to exercise her right to take FMLA leave. For the reasons set forth below, the Court finds that Plaintiff has failed to raise a material dispute of fact as to either claim.

  *i.*  *Interference by Ms. Russo*

  Plaintiff has failed to present evidence raising a material dispute of fact that Ms. Russo interfered with Plaintiff's right to take FMLA leave.  Plaintiff alleges interference on the basis that Ms. Russo misinformed Plaintiff of her rights under the FMLA when she told Plaintiff that siblings were not covered.  However, Ms. Russo did not provide incorrect information: the FMLA does not cover care of siblings.  *Smith v. Women's Healthcare Assocs., LLC*, 813 F. Supp. 2d 1224, 1226 (D. Or. 2011); *O'Hara v. GBS Corp.*, No. 5:12CV2317, 2013 WL 1399258, at *2 (N.D. Ohio Mar. 13, 2013), *report and recommendation adopted*, No. 5:12 CV 2317, 2013 WL 1399317 (N.D. Ohio Apr. 5, 2013).

  Although Plaintiff found through research that the FMLA extends the definition of "parent" and "son or daughter" to those standing in loco parentis, FMLA leave only applies "when the employee had initially explained to the employer the in loco parentis status." *Id.* (collecting cases); *see also Abousaidi v. Mattress Discounters Corp.*, No. 1:05CV1142 (JCC), 2005 WL 3797366, at *2 (E.D. Va. Dec. 8, 2005) ("Plaintiff had to inform Defendant that his grandparent stood *in loco parentis* in order to take advantage of FMLA's protection.").  Here, Plaintiff has offered no evidence that she informed AT&T of her in loco parentis status until her reply to Ms. Russo on August 16, 2016.  *See* Dkt. #51 at 17.  For that reason, she has not raised a material dispute of fact that Ms. Russo engaged in interference when she informed Plaintiff that care for her brother was not covered under the FMLA.

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 24

Plaintiff also argues that Ms. Russo interfered by not letting her "speak with an HR person who knew about FMLA, someone who actually was trying to help me do the process correctly . . . ." Dkt. #58-2 at ¶ 4.   However, nothing in Ms. Russo's correspondence reflects that she prevented or attempted to prevent Plaintiff from speaking with HR.  On the contrary, Ms. Russo referred Plaintiff to internal AT&T information on FMLA leave and provided a link to HROneStop so that Plaintiff could message or call an HR representative if she needed further information.  *See* Dkt. #51 at 16-18.

Finally, Plaintiff claims that once she informed Ms. Russo about the in loco parentis clause, Ms. Russo "insisted that [Russo] had to make the request for leave . . . and insisted on the Plaintiff sharing details of her request with Ms. Russo." Dkt. #58 at 20.  Plaintiff also challenges AT&T's requirement that she submit her request within 30 days of the requested leave period. *Id.*  None of these actions constitute interference, given that employers are entitled to impose reasonable leave practices, such as requiring that employees speak with their managers if they need to take a leave of absence or contact their managers in the event of an FMLA absence. *Shelton v. Boeing Co.*, 702 F. App'x 567, 568 (9th Cir. 2017) (affirming grant of summary judgment on employee's WFLA interference claim where employee failed to follow company's "usual and customary policy for requesting leave" that included communicating with manager).

For these reasons, Plaintiff's claim for FMLA interference based on Ms. Russo's actions fails as a matter of law.

### ii.     Retaliation for Requesting Leave

Turning to Plaintiff's second interference argument, Plaintiff claims that AT&T's adverse actions against Plaintiff, including terminating her employment, constitute unlawful interference under the FMLA and WFLA.  Dkt. #1 at ¶ 36.  Parties appear to agree that the applicable standard

for this claim is whether Plaintiff can prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her.  *See* Dkts. #47 at 22; #58 at 19.  Plaintiff may prove this claim using either direct or circumstantial evidence, and the Ninth Circuit does not apply the burden-shifting framework under *McDonnell Douglas*. *Bachelder*, 259 F.3d at 1125; *see also Denison v. Kaiser Found. Health Plan of the Northwest*, 868 F.Supp.2d 1065, 1080 (D. Or. 2012).

Plaintiff's only evidence that her request for FMLA leave constituted a negative factor in her ratings in AWG 1 or selection for surplus is (1) the proximity in time between her request and AT&T's adverse action; and (2) David Whittington's October 17, 2016 email stating that all individuals affected by the reduction had already been notified.  While proximity in time may be circumstantial evidence that the employer used an employee's leave request as a negative factor, "proximity must be considered in factual context."  *Douglas v. Dreamdealers USA, LLC*, 416 F. Supp. 3d 1063, 1071 (D. Nev. 2019) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)).  Likewise, as the Court found with respect to Plaintiff's discrimination claims, Mr. Whittington's email amounts to weak circumstantial evidence refuted by Mr. Rossi's and Ms. Russo's declarations that they were only notified of Plaintiff's designation for surplus on October 27, 2016 and Ms. Russo learned of her own selection for surplus the same day as Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could find that AT&T considered Plaintiff's leave request a negative factor in her ratings or termination. *Cf. id.* (dispute of fact as to whether FMLA leave was negative factor where removal letter "specifically referred to absences as the basis for the decision . . . .").  Regarding Plaintiff's selection for surplus, it is undisputed that AT&T requested ratings for purposes of a reduction in force, and that Plaintiff was the lowest-ranking member in her AWG team.  It is likewise

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 26

undisputed that fifteen other employees in Mr. Rossi's organization, including Ms. Russo, were impacted by the surplus, such that Plaintiff was not the only one affected.

Regarding Plaintiff's ratings, both Mr. Rossi and Ms. Russo testify that they did not consider Plaintiff's leave or intent to take leave in their ratings.  Dkts. #53 at ¶ 67; Dkt. #51 at ¶ 38.  Plaintiff has introduced no evidence to raise an inference that their testimony is not credible. On the contrary, the AWG 1 ratings support their statements that the Database Administrators' evaluations did not consider past or future absences.  The ratings were based on evaluations of the Database Administrators' competencies at the time of the evaluation, none of which considered past or future attendance.  *See* Dkt. #56 (sealed);   Dkt. #53 at ¶¶ 61-62.  Moreover, the Directors, including Mr. Rossi, were asked to submit their ratings by October 11, 2016—5 days before Plaintiff requested leave for the second week of December 2016.  *Id.* at ¶ 63; Dkt. #51 at ¶ 31.  For that reason, Plaintiff's request for FMLA leave could not have been considered in the ratings, given that she had not yet requested it.

For these reasons, the Court finds no material dispute of fact precluding summary judgment on Plaintiff's FMLA interference claim based on AT&T's retaliation for her leave request.  Accordingly, summary judgment is GRANTED in favor of AT&T as to Plaintiff's interference claim under FMLA and WFLA.

### G.  Wrongful Discharge under Washington Common Law

"The tort of wrongful discharge against public policy is an exception to the general principle that employees in Washington are terminable at-will."  *Nettleton v. United Parcel Serv., Inc.*, No. C19-1684-JCC, 2021 WL 197133, at *3 (W.D. Wash. Jan. 20, 2021) (citing *Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1141 (Wash. 2015)).  The tort applies if an employee's dismissal violated a clear mandate of public policy, including "where employees are

fired for exercising a legal right or privilege . . . ." *Rose*, 358 P.3d at 1441.  Plaintiff's claims fit this circumstance, where she was allegedly terminated for reporting discrimination and requesting leave to care for her brother.  Dkt. #1 at ¶¶ 38-39.  To establish a claim of wrongful discharge, she must establish that her exercise of her rights was a "significant factor" in AT&T's decision to terminate her.  *Martin v. Gonzaga U.*, 425 P.3d 837, 844 (Wash. 2018).

To the extent Plaintiff alleges wrongful discharge for reasons that are duplicative of her discrimination claims, such claims are improper under Washington law.  *See Gamble v. Pac. Nw. Reg'l Council of Carpenters*, 2015 WL 402782, at *6 (W.D. Wash. Jan 29, 2015) (holding that a common law tort claim that is predicated on the same facts as a discrimination claim is duplicative and must be dismissed); *Hochberg v. Lincare, Inc.* 2008 U.S. Dist. LEXIS 34638, at *20-*21, 2008 WL 1913853 (E.D. Wash. Apr. 28, 2008) (dismissing a wrongful discharge claim as duplicative of WLAD claim).

Moreover, the Court has already found that Plaintiff has not raised a genuine issue of material fact regarding whether she was fired for any protected act or requesting leave under the FMLA or WFLA.  Those findings destroy the "significant factor" element of her wrongful discharge claim.  *Martin*, 425 P.3d at 844.  For that reason, while Plaintiff argues in Response that a reasonable juror could find that her request for FMLA leave or Ms. Russo's prejudice against Plaintiff were "substantial factor[s]" leading to her low ratings and termination, Dkt. #58 at 23-25, she provides no new evidence to alter the Court's conclusion.  Accordingly, summary judgment in favor of AT&T is appropriate.

## H. Lost Wages

Plaintiff also seeks recovery of lost wages under RCW 49.52 and RCW 49.48.  Dkt. #1 at ¶ 1.  However, in her response to AT&T's motion, she "concedes that discovery has not resulted

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 28

in evidence to support a claim for unpaid wages." Dkt. #58 at 25.  Accordingly, the Court grants

summary judgment in favor of AT&T on this claim.

## IV.    CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and

the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment, Dkt. #47, is GRANTED in entirety.

(2) Defendant's Motion to Seal, Dkt. #55, is GRANTED.


DATED this 16th day of August, 2021.



RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT AT&T'S MOTION FOR SUMMARY JUDGMENT - 29